UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WANDA WATSON, individually and on behalf of all others similarly situated,

      Plaintiff,

v.

KELLOGG SALES COMPANY,

      Defendants.

Case No. 1:19-cv-1356-DLC

The Honorable Denise L. Cote

**KELLOGG SALES COMPANY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**JENNER & BLOCK LLP**

Elizabeth A. Edmondson
eedmondson@jenner.com
919 Third Avenue
New York, NY 10022
Tel.: (212) 891-1600
Fax: (212) 891-1699

Dean N. Panos (*pro hac vice* pending)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
Fax: (312) 527-0484

Alexander M. Smith (*pro hac vice* pending)
asmith@jenner.com
633 West 5th Street
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199

*Attorneys for Defendant*
Kellogg Sales Company

## **TABLE OF CONTENT**

INTRODUCTION ................................................................................................ 1

ALLEGATIONS OF THE COMPLAINT ............................................................ 2

ARGUMENT ....................................................................................................... 3

    I.    Plaintiff Has Not Plausibly Alleged That Keebler Grahams'
    Packaging Is Deceptive ............................................................................ 4

        A.    The Phrase "Keebler Grahams" Is Not Misleading as a
        Matter of Law ................................................................................ 5

        B.    The Labeling of the "Honey" Flavor Is Also Not Misleading .............. 10

    II.    Plaintiff Fails to State a Plausible Breach-of-Warranty Claim ........................ 11

        A.    Plaintiff's Express Warranty Claim Fails for Lack of
        Pre-Suit Notice ............................................................................ 11

        B.    Plaintiff's Implied Warranty Claim Fails Because Keebler
        Grahams Are Fit for Consumption ........................................................ 12

    III.    Plaintiff Fails to State a Claim Under the Illinois Consumer Fraud
    Act Because There Is No Nexus Between Her Alleged Injuries and
    the State of Illinois ................................................................................ 13

    IV.    Plaintiff Fails to Allege the Fraudulent Intent Necessary to Plead a
    Claim for Fraud ................................................................................ 14

    V.    New York's Economic Loss Rule Bars Plaintiff's Negligent
    Misrepresentation Claim ................................................................... 15

    VI.    Plaintiff Fails to State a Claim for Unjust Enrichment ................................. 16

    VII.    Plaintiff Lacks Standing to Seek Injunctive Relief ...................................... 16

    VIII.    The Court Lacks Personal Jurisdiction Over Claims of Non-
    Resident Class Members ................................................................... 18

CONCLUSION .............................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................................4

*Atik v. Welch Foods, Inc.*,
No. 15-5405, 2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016) ..................................17

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.D.2d 801 (Ill. 2005).........................................................................................13

*Axon v. Citrus World, Inc.*,
354 F. Supp. 3d 170 (E.D.N.Y. 2018) .....................................................................11

*Baur v. Veneman*,
352 F.3d 625 (2d Cir. 2003).......................................................................................16

*Belfiore v. Procter & Gamble Co.*,
311 F.R.D. 29 (E.D.N.Y. 2015) ...................................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).......................................................................................................4

*Biro v. Condé Nast*,
807 F.3d 541 (2d Cir. 2015).........................................................................................4

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017).........................................................................................19, 20

*Brumfield v. Trader Joe's Co.*,
No. 17-3239, 2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018)............................10, 12

*Buonasera v. Honest Co.*,
208 F. Supp. 3d 555 (S.D.N.Y. 2016)......................................................................18

*Cacchillo v. Insmed, Inc.*,
638 F.3d 401 (2d Cir. 2011).......................................................................................16

*Caronia v. Phillip Morris USA, Inc.*,
715 F.3d 417 (2d Cir. 2013).......................................................................................12

*Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed
Care, L.L.C.*,
433 F.3d 181 (2d Cir. 2005).......................................................................................17

*Cherny v. Emigrant Bank*,
  604 F. Supp. 2d 605 (S.D.N.Y. 2009) ..................................................................15

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ...........................................................................................17

*Cohen v. JPMorgan Chase & Co.*,
  498 F.3d 111 (2d Cir. 2007) ...............................................................................4

*Colella v. Atkins Nutritionals, Inc.*,
  348 F. Supp. 3d 120 (E.D.N.Y. 2018) ...........................................................11, 12

*Corsello v. Verizon N.Y., Inc.*,
  18 N.Y.3d 777 (2012) ........................................................................................16

*Crichton v. Golden Rule Ins. Co.*,
  576 F.3d 392 (7th Cir. 2009) ..............................................................................13

*Daniel v. Mondelēz Int'l, Inc.*,
  287 F. Supp. 3d 177 (E.D.N.Y. 2018) ...................................................................5

*Davis v. Hain Celestial Grp., Inc.*,
  297 F. Supp. 3d 327 (E.D.N.Y. 2018) .............................................................14, 17

*DeShawn E. ex rel. Charlotte E. v. Safir*,
  156 F.3d 340 (2d Cir. 1988) ...............................................................................17

*Ebin v. Kangadis Food Inc.*,
  No. 13-2311, 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) ...................................16

*Elkind v. Revlon Consumer Prods. Corp.*,
  No. 14-2484, 2015 WL 2344134 (E.D.N.Y. May 14, 2015) .............................15, 17

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013) ............................................................................4, 6

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) .............................................................................7, 8

*Greene v. Gerber Prods. Co.*,
  262 F. Supp. 3d 38 (E.D.N.Y. 2017) ...................................................................14

*Haught v. Motorola Mobility, Inc.*,
  No. 12-2515, 2012 WL 3643831 (N.D. Ill. Aug. 23, 2012) ....................................13

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) ..........................................................................................19

*Hidalgo v. Johnson & Johnson Consumer Cos.*,
    148 F. Supp. 3d 285 (S.D.N.Y. 2015)................................................................16, 17

*Holve v. McCormick & Co.*,
    334 F. Supp. 3d 535 (W.D.N.Y. 2018)................................................................18

*In re 100% Grated Parmesan Cheese Marketing & Sales Practices Litigation*
    275 F. Supp. 3d  910 (N.D. Ill. 2017)................................................................7, 8

*In re Edgewell Personal Care Co. Litig.*,
    No. 16-3371, 2018 WL 7858623 (E.D.N.Y. Sept. 4, 2018)................................18

*In re Frito-Lay N. Am., Inc. All. Natural Litig.*,
    No. 12-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013)................................2, 14

*Izquierdo v. Mondelēz Int'l, Inc.*,
    No. 16-4697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016)................................18

*Kelly v. Cape Cod Potato Chip Co.*,
    81 F. Supp. 3d 754 (W.D. Mo. 2015)................................................................6

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)................................................................14

*Mahoney v. Endo Health Solutions, Inc.*,
    No. 15-9841, 2016 WL 3951185 (S.D.N.Y. July 20, 2016)................................16

*Mantikas v. Kellogg Company*,
    910 F.3d 633 (2d Cir. 2018)................................................................8, 9

*McBeth v. Porges*,
    171 F. Supp. 3d 216 (S.D.N.Y. 2016)................................................................14

*McKinnis v. Kellogg USA*,
    No. 07-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007)................................5

*Nashville Syrup Co. v. Coca Cola Co.*,
    215 F. 527 (6th Cir. 1914)................................................................5

*Nelson v. MillerCoors, LLC*,
    246 F. Supp. 3d 666 (E.D.N.Y. 2017)................................................................13

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016)................................................................17

*Parks v. Ainsworth Pet Nutrition, LLC*,
    --- F. Supp. 3d ----, 2019 WL 1924906 (S.D.N.Y. Apr. 18, 2019)................................4

*Paulino v. Conopco, Inc.*,
No. 14-5145, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ...................................................11

*Pension Ben. Guar. Corp ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)...................................................................................................4

*Phillips v. Bally Total Fitness Holding Corp.*,
865 N.E.2d 310 (Ill. Ct. App. 2007) ....................................................................................13

*Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*,
301 F. Supp. 3d 840 (N.D. Ill. 2018) ...................................................................................20

*Quinn v. Walgreen Co.*,
958 F. Supp. 2d 533 (S.D.N.Y. 2013)...................................................................................12

*Quiroz v. Beaverton Foods, Inc.*,
No. 17-7348, 2019 WL 1473088 (E.D.N.Y. Mar. 31, 2019)...............................................14

*Rodriguez v. It's Just Lunch, Int'l*,
No. 07-9227, 2010 WL 685009 (S.D.N.Y. Feb. 23, 2010)..................................................14

*Ruggiero v. Perdue Poultry Co.*,
No. 96-4929, 1997 WL 811530 (S.D.N.Y. Sept. 29, 1997) ................................................12

*Salters v. Beam Suntory, Inc.*,
No. 14-659, 2015 WL 2124939 (N.D. Fla. May 1, 2015) .....................................................6

*Segedie v. Hain Celestial Grp., Inc.*,
No. 14-5029, 2015 WL 2168374 (S.D.N.Y. 2015)...............................................................15

*Singleton v. Fifth Generation, Inc.*,
No. 15-474, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016).....................................................12

*Smith v. Local 819 I.B.T. Pension Plan*,
291 F.3d 236 (2d Cir. 2002)...................................................................................................3

*Solak v. Hain Celestial Grp., Inc.*,
No. 17-704, 2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018)..................................................11

*Spratley v. FCA US LLC*,
No. 17-62, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017)..................................................20

*Stiles v. Trader Joe's Co.*,
No. 16-4318, 2017 WL 3084267 (C.D. Cal. Apr. 4, 2017) .................................................10

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
No. 14-3826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ..............................................15

5

*Tomasino v. Estee Lauder Cos.*,
   44 F. Supp. 3d 251 (E.D.N.Y. 2014) .........................................................................18

*Trujillo v. Apple Computer, Inc.*,
   581 F. Supp. 2d 935 (N.D. Ill. 2008) ..........................................................................7

*Warth v. Seldin*,
   422 U.S. 490 (1975)....................................................................................................17

*Weinstein v. eBay, Inc.*,
   819 F. Supp. 2d 219 (S.D.N.Y. 2011)..........................................................................4

*Weisblum v. Prophase Labs, Inc.*,
   88 F. Supp. 3d 283 (S.D.N.Y. 2015)..........................................................................15

*Werbel v. Pepsico, Inc.*,
   No. 09-4456, 2010 WL 2673860 (N.D. Cal. July 2, 2010) .........................................5

*Workman v. Plum Inc.*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015) ...............................................................8, 10

**STATUTES**

Illinois Consumer Fraud Act....................................................................................2, 13, 14

N.Y. U.C.C. § 2-607(3)(a) .............................................................................................11

**OTHER AUTHORITIES**

21 C.F.R. § 137.200 ..........................................................................................................3

https://www.dictionary.com/browse/pound-cake (last visited June 3, 2019).................6

Fed. R. Civ. P. 12(b)(6).....................................................................................................3

## INTRODUCTION

Whether eaten with marshmallows and chocolate or alone as a sweet treat, Kellogg's Keebler Grahams are a familiar dessert found in the cookie aisle of stores across America. Kellogg does not represent that Keebler Grahams are healthy, nutritious, or low in sugar. Nor does the packaging of Keebler Grahams call attention to the presence of whole grains. But Plaintiff Wanda Watson nonetheless claims that the iconic name "Keebler Grahams" conveys the misleading impression that these cookies are made primarily with "graham flour," rather than enriched white flour. The premise of her putative class action is implausible and merits dismissal.

Plaintiff's allegation that the name "Keebler Grahams" is a statement about the *type* of flour present in the product ignores context and common sense — which the Supreme Court has specifically directed district courts to consider in determining whether a complaint states a plausible claim for relief. It is commonly understood that a "graham cracker" is a honey-colored cookie with a characteristic sweet taste, often in a perforated rectangular shape. Reasonable consumers would accordingly associate the name "Keebler Grahams" with the *type* of cookie — not with the presence of "graham flour."

At best, Plaintiff's complaint establishes that the phrase "Keebler Grahams" may be ambiguous and that consumers may interpret this term in different ways. But as many courts have held, an ambiguous labeling statement is not deceptive if the remainder of the label, viewed as a whole, would cure that ambiguity. Here, if a consumer was unsure whether graham flour was the predominant ingredient in Keebler Grahams, the ingredient list would make clear that it is not. Despite Plaintiff's suggestion to the contrary, this is not a case where Kellogg prominently touts the presence of graham flour on its products, only to correct this misstatement in the ingredient list. Indeed, it is doubtful that most consumers even know what "graham flour" is.

Even if this Court concluded that Plaintiff has stated a plausible claim under New York's consumer fraud law, *all* of her remaining claims suffer from independent, fatal defects that require their dismissal:

- The breach of express warranty claim fails for lack of pre-suit notice to Kellogg;

- The breach of implied warranty claim fails because the Keebler Grahams are plainly not unfit for consumption, as would be required to state a breach of implied warranty claim;

- The claim under the Illinois Consumer Fraud Act ("ICFA") fails because there is no nexus whatsoever between Plaintiff's purchase of Keebler Grahams and the State of Illinois;

- The negligent misrepresentation claim is barred by New York's economic loss rule;

- The common-law fraud claim is totally devoid of any plausible allegation of scienter; and

- The unjust enrichment claim is entirely duplicative of Plaintiff's other claims.

Finally, regardless of whether Plaintiff can seek damages on behalf of putative class members, she lacks standing to seek injunctive relief: now that she is aware that Keebler Grahams contain more enriched flour than graham flour, there is no further risk that she will be "deceived." And while she purports to assert her claims on behalf of a nationwide class, recent Supreme Court precedent makes clear that this Court cannot exercise personal jurisdiction over the claims of non-resident class members whose alleged injuries have no connection to New York.

## ALLEGATIONS OF THE COMPLAINT

Kellogg manufactures and sells Keebler Grahams in four flavors: Original, Honey, Cinnamon, and Deluxe.  Compl. ¶ 2.  The Original, Honey, and Cinnamon flavors are rectangular, thin, crunchy graham crackers, while the Deluxe flavor is covered in chocolate fudge.  *Id.* ¶¶ 4-5. The front of each label depicts the graham cracker, along with the Keebler elf and the name "Keebler Grahams" or "Keebler Deluxe Grahams."  *Id.* ¶ 5.

Plaintiff claims that the labeling of "Keebler Grahams" misleads consumers into believing that the products are predominantly made from "graham flour," which is a type of coarse-ground wheat flour.  *See id.* ¶ 11; *see also* 21 C.F.R. § 137.200 (FDA regulation defining "whole wheat flour," and other synonyms, including "graham flour").  The Keebler Grahams label does not state that the crackers are "made with graham flour."  In fact, the only location where the phrase "graham flour" appears on the box is in the ingredient list, which lists "graham flour" after "enriched flour" — thereby disclosing that graham flour is not the predominant grain in Keebler Grahams.  *See* Compl. ¶ 9.  Thus, the gravamen of Plaintiff's claim is that the very name of the products — "Keebler Grahams" — suggests that they predominantly contain graham flour, which consumers supposedly perceive as healthier than enriched white flour.  *See id.* ¶ 10.  Plaintiff claims Kellogg's practice of "passing off" graham crackers made with inferior flour is deceptive and allows Kellogg to charge a "premium price."  *Id.* ¶¶ 23-28.

Based on these allegations, Plaintiff asserts statutory consumer fraud claims under New York and Illinois law, as well as common-law claims for breach of express and implied warranty, negligent misrepresentation, fraud, and unjust enrichment.  *Id.* ¶¶ 49-74.  She purports to represent a nationwide class of Keebler Grahams consumers as well as a New York subclass, (*id.* ¶¶ 39-48), and she seeks a variety of remedies on behalf of the putative class, including damages and injunctive relief (*id.* at pp. 11-12).

## ARGUMENT

Under Rule 12(b)(6), "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (citation and internal quotation marks omitted).  Rather, to survive a motion to dismiss, "a complaint must contain 'enough facts to state a claim to relief that

is plausible on its face.'" *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Importantly, a court must "draw on its judicial experience and *common sense*" in ruling on a motion to dismiss.  *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) (emphasis added).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not 'show[n]' . . . that the pleader is entitled to relief."  *Id.* (quoting *Iqbal*, 556 U.S. at 679) (alteration in original).  Rather, the plaintiff must "allege more by way of factual content to 'nudg[e] his claim'" of unlawful action "'across the line from conceivable to plausible.'"  *Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570); *see also, e.g.*, *Parks v. Ainsworth Pet Nutrition, LLC*, --- F. Supp. 3d ----, No. 18-6936, 2019 WL 1924906, at *4 (S.D.N.Y. Apr. 18, 2019) (applying this principle to dismiss "implausible" consumer class action premised on "absolutist" interpretation of challenged labeling statements).

## I.    Plaintiff Has Not Plausibly Alleged That Keebler Grahams' Packaging Is Deceptive.

To prevail on her consumer fraud claims, Plaintiff must show that Kellogg's allegedly misleading statements "were likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).  The "applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled . . . ."  *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011).  This is an "objective" standard, which is not defined by the unique views of the particular consumer before the Court.  *Cohen v. JPMorgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007).  And consistent with the Supreme Court's admonition in *Iqbal*, this Court must apply "common sense" in determining whether Plaintiff has stated a plausible claim of deception.  556 U.S. at 679; *see also*

*Daniel v. Mondelēz Int'l, Inc.*, 287 F. Supp. 3d 177, 194 (E.D.N.Y. 2018) ("A reasonable consumer does not lack common sense.").

A.      **The Phrase "Keebler Grahams" Is Not Misleading as a Matter of Law.**

Plaintiff's lawsuit is premised on the allegation that she interpreted the phrase "Keebler Grahams" to mean that "graham flour," rather than enriched white flour, was the predominant ingredient in the product.  But nothing about the *product name* "Keebler Grahams" would suggest that the product is made with a specific type of flour, let alone that it is the predominant type of flour in the product.  Instead, it communicates that Keebler Grahams are *graham crackers*, which consumers associate with a characteristic shape, color, texture, and flavor.  The Sixth Circuit recognized this basic point over a century ago:

> The use of a compound name does not necessarily indicate that the article to which the name is applied contains the substances whose names make up the compound. Thus, soda water contains no soda; the butternut contains no butter; cream of tartar contains no cream; nor milk of lime any milk.  Grape fruit is not the fruit of the grape; nor is bread fruit the fruit of bread; the pineapple is foreign to both the pine and the apple; and the manufactured food known as Grape Nuts contains neither grapes nor nuts.

*Nashville Syrup Co. v. Coca Cola Co.*, 215 F. 527, 532 (6th Cir. 1914).  That holding is consistent with more recent cases that have rejected consumer class actions premised on a similarly unreasonable, hyper-literal interpretation of the name of a food product.  *See, e.g.*, *Werbel v. Pepsico, Inc.*, No. 09-4456, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (dismissing lawsuit challenging "Crunch Berries" cereal, as "no reasonable consumer would believe that Cap'n Crunch derives any nutritional value from berries"); *McKinnis v. Kellogg USA*, No. 07-2611, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) ("No reasonable consumer would view the trademark "FROOT LOOPS" name as describing the ingredients of the cereal.").

Plaintiff's reliance on the dictionary definition of "graham cracker" to suggest the presence of graham flour is mistaken.  A dictionary definition of a term is not necessarily probative of what a reasonable consumer would believe — particularly when the dictionary definition would result in an unrealistic interpretation of a labeling statement.  *See, e.g.*, *Salters v. Beam Suntory, Inc.*, No. 14-659, 2015 WL 2124939, at *2 (N.D. Fla. May 1, 2015) (dismissing claim against manufacturer of Maker's Mark bourbon and holding that dictionary definition of "handmade" was implausible as applied to mass-produced whiskey); *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 760 (W.D. Mo. 2015) ("The Merriam-Webster definition offered by Plaintiff for the term 'natural' . . . is not plausible because the Chips are processed foods, which of course do not exist or occur in nature.").  Here, the dictionary definition of "graham crackers" reflects nothing more than the history and etymology of the term — not what reasonable consumers in 2019 believe.  Just as a reasonable consumer would not believe that a "pound cake" necessarily contains a pound of sugar, a pound of flour, and a pound of butter[1], a reasonable consumer would likewise not believe that a "graham cracker" necessarily contains graham flour, let alone that it is the predominant ingredient.

Even if Plaintiff's allegations were sufficient to establish that the term "Keebler Grahams" is ambiguous, that is not nearly enough to establish that this term is deceptive.  "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial," and "the presence of a disclaimer or similar clarifying language may defeat a claim of deception."  *Fink*, 714 F.3d at 742.  Consistent with the Second Circuit's admonition, many courts have dismissed claims premised on an arguably ambiguous labeling statement when the remainder of the package eliminated any ambiguity about the challenged labeling statement.  *See, e.g.*,

---

[1] *See* https://www.dictionary.com/browse/pound-cake (last visited June 3, 2019) (defining "pound cake" as "a rich, sweet cake made originally with approximately a pound each of butter, sugar, and flour").

*Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) ("Courts view each allegedly misleading statement in light of its context . . . The entire mosaic is viewed rather than each tile separately.") (citations and internal quotation marks omitted); *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (affirming dismissal of false advertising lawsuit where "[a]ny ambiguity that [the plaintiff] would read into any particular statement is dispelled by the promotion as a whole"); *Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935, 938 (N.D. Ill. 2008) ("If other information disclosed or available to the consumer dispels any tendency to deceive, there is no deception.").

*In re 100% Grated Parmesan Cheese Marketing & Sales Practices Litigation*, 275 F. Supp. 3d 910 (N.D. Ill. 2017), is particularly instructive.  There, the plaintiffs claimed that the phrase "100% Grated Parmesan Cheese" was misleading because it falsely implied that the product *only* contained grated parmesan cheese, even though it also contained small amounts of cellulose and potassium sorbate.  *Id.* at 914-16.  The court held that the plaintiffs had not stated a plausible claim of deception.  After surveying false advertising case law from around the country (including New York), the court synthesized these cases into the following rule: "Where a plaintiff contends that certain aspects of a product's packaging are misleading in isolation, but an ingredient label or other disclaimer would dispel any confusion, the crucial issue is whether the misleading content is ambiguous; if so, context can cure the ambiguity and defeat the claim, but if not, then context will not cure the deception and the claim may proceed."  *Id.* at 922.  In other words, the court explained, "consumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight . . . ."  *Id.*

Applying this rule, the court concluded that the statement "100% Grated Parmesan Cheese" was ambiguous: even if a consumer *might* interpret this statement to mean that the product

contained no ingredients other than parmesan cheese, the court reasoned, a consumer might also interpret it to mean that the product contained no cheeses other than parmesan cheese, or that 100% of the cheese was grated.  *Id.* at 923.  In light of these multiple potential meanings, "[r]easonable consumers would . . . need more information before concluding that the labels promised only cheese and nothing more, and they would know exactly where to look to investigate — the ingredient list."  *Id.*

That reasoning applies with equal force here.  Even if Plaintiff were correct that *some* consumers might interpret the name "Keebler Grahams" to refer to the presence of graham flour, a consumer could just as easily construe this phrase to refer to the flavor, shape, or texture of the product.  Far from establishing that the name "Keebler Grahams" constitutes an affirmative misrepresentation, Plaintiff's complaint merely indicates that this term has multiple plausible meanings — or, in other words, that it is ambiguous.  And in light of that supposed ambiguity, a reasonable consumer would consult the ingredient list — which discloses that Keebler Grahams contain more enriched white flour than graham flour.  *See* Compl. ¶ 19.  Viewed "as a whole," (*Freeman*, 68 F.3d at 290), the packaging is more than sufficient to cure any ambiguity resulting from the use of the phrase "Keebler Grahams."  *See Grated Parmesan*, 275 F. Supp. 3d at 923; *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (dismissing false advertising lawsuit where "any potential ambiguity could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA").

To the extent Plaintiff argues that this outcome is inconsistent with *Mantikas v. Kellogg Company*, 910 F.3d 633 (2d Cir. 2018), she is mistaken.  In *Mantikas*, the Second Circuit held that the plaintiffs had plausibly alleged that they interpreted the statement "Made with Whole Grain" to suggest that whole grains were the predominant ingredient in Cheez-It crackers.  *Id.* at 634.  The

court reasoned that "reasonable consumers are likely to understand that crackers are typically made predominantly of grain" and "look to the bold assertions on the packaging to discern what *type* of grain." *Id.* at 638.  The court concluded that "the representation that a cracker is 'made with whole grain' would thus plausibly lead a reasonable consumer to conclude that the grain ingredient was entirely, or at least predominately, whole grain."  *Id.*  Because the statement "Made with Whole Grain" suggested that Cheez-It crackers were made predominantly with whole grain, the court concluded that the "Nutrition Facts panel and ingredients list . . . contradict, rather than confirm, Defendant's 'whole grain' representations on the front of the box."  *Id.* at 637.

Nothing about *Mantikas* suggests that a reasonable consumer would interpret the phrase "Keebler Grahams" to suggest that the challenged products are predominantly made of graham flour.  Keebler Grahams do not purport to be "Made with Graham Flour."  In fact, other than the ingredient list, the packaging does not even *mention* graham flour.  And unlike *Mantikas*, where the statement "Made with Whole Grains" *necessarily* implies the presence of whole grains, it is far from clear that a reasonable consumer would interpret the name "Keebler Grahams" to refer to the presence of graham flour at all — let alone to suggests graham flour is the predominant ingredient.

Moreover, the Second Circuit emphasized that its holding in *Mantikas* is not a one-size fits all rule.  It explicitly disclaimed any suggestion that a plaintiff can automatically survive dismissal by alleging that "food product labels asserting that the food was 'made with' various ingredients misled [her] to believe that the stated ingredient was the dominant, or at least a major, ingredient." *Id.* at 637.  And it reaffirmed that courts must still "consider the challenged advertising as a whole, including disclaimers and qualifying language."  *Id.* at 636.  Here, in contrast to *Mantikas*, the packaging "as a whole" does not suggest that graham flour is present in Keebler Grahams or that

it is the predominant ingredient.  At the absolute most, it suggests that the phrase "Keebler Grahams" may be ambiguous — which is not sufficient to state a consumer fraud claim, particularly when the packaging accurately discloses that Keebler Grahams contain more enriched flour than graham flour.

### B.     The Labeling of the "Honey" Flavor Is Also Not Misleading.

Plaintiff alleges that the "Honey" flavor of Keebler Grahams is mislabeled for a separate reason: it purports to use honey as the "predominant sweetening agent," but actually contains more sugar than honey.  Compl. ¶¶ 25-26.  This theory of deception fails for a similar reason: the packaging does not represent that honey is used as a sweetening agent, as opposed to a flavoring. To the extent that there is any ambiguity about whether honey is used as the primary sweetening agent (or whether it is present in the product at all), the labeling of the "Honey" variety dispels that ambiguity by "list[ing] all ingredients in order of predominance, as required by the FDA." *Workman*, 141 F. Supp. 3d at 1035.

For that reason, many courts have rejected lawsuits alleging that a product did not contain the ingredient that provided its characteristic flavor.  *See, e.g.*, *Brumfield v. Trader Joe's Co.*, No. 17-3239, 2018 WL 4168956, at *2-3 (S.D.N.Y. Aug. 30, 2018) (dismissing lawsuit challenging truffle-flavored olive oil made without real truffles); *Stiles v. Trader Joe's Co.*, No. 16-4318, 2017 WL 3084267, at *4-5 (C.D. Cal. Apr. 4, 2017) (dismissing lawsuit challenging maple-flavored breakfast products made without maple syrup or maple sugar).  Plaintiff's claim is even more tenuous than those rejected in *Brumfield* and *Stiles*, as she concedes that the Honey-flavored Keebler Grahams contain real honey.  *See* Compl. ¶ 9 (ingredient list).  Plaintiff has not come close to establishing that the unadorned term "Honey" is an affirmative misrepresentation (as opposed

to a merely ambiguous statement) or that it suggests that honey is the predominant sweetener.  This Court should reject this theory of deception.

## II.     Plaintiff Fails to State a Plausible Breach-of-Warranty Claim.

When a plaintiff alleges that supposedly false advertising constitutes a breach of a warranty, she cannot prevail on that breach-of-warranty claim unless she can establish that the defendant's advertising was likely to mislead a reasonable consumer.  *See, e.g.*, *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 185 (E.D.N.Y. 2018) ("[A] breach of express warranty claim is governed by the same reasonable consumer standard as Plaintiff's [NYGBL] claims.") (alteration in original); *Solak v. Hain Celestial Grp., Inc.*, No. 17-704, 2018 WL 1870474, at *11 (N.D.N.Y. Apr. 17, 2018) ("[B]ecause those three representations . . . are insufficient as a matter of law to mislead a reasonable consumer, they cannot be relied upon by Plaintiffs as grounds for asserting a breach of express warranty . . . .").  Here, absent any plausible allegation that the name "Keebler Grahams" or the "Honey" flavor would mislead a reasonable consumer, Plaintiff cannot state a claim for breach of express or implied warranty against Kellogg.

Furthermore, even if the Court concluded that Plaintiff's theory of deception is viable, Plaintiff's claims for breach of express and implied warranty both suffer from independent, fatal defects that require their dismissal.

### A.     Plaintiff's Express Warranty Claim Fails for Lack of Pre-Suit Notice.

"To successfully state a claim for breach of warranty" under New York law, "a buyer must provide the seller with timely notice of an alleged breach of warranty."  *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (citations and internal quotation marks omitted); *see generally* N.Y. U.C.C. § 2-607(3)(a).  Failure to do so bars a plaintiff from bringing a claim for breach of express warranty.  *See Paulino v. Conopco, Inc.*, No. 14-5145, 2015

WL 4895234, at *1 (E.D.N.Y. Aug. 17, 2015) ("New York law requires that a buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.") (citation and internal quotation marks omitted).

Here, Plaintiff does not allege that she provided Kellogg with notice of its purported breach of warranty prior to filing this lawsuit.  Under New York law, this requires the dismissal of her claim for breach of express warranty.  *See, e.g.*, *Colella*, 348 F. Supp. 3d at 143 (dismissing breach of express warranty claim for lack of pre-suit notice); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (same); *Singleton v. Fifth Generation, Inc.*, No. 15-474, 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016) (dismissing breach of express warranty claim because plaintiff "failed to allege that he provided timely notice to Defendant of the alleged breach").

### B. Plaintiff's Implied Warranty Claim Fails Because Keebler Grahams Are Fit for Consumption.

Under New York law, the implied warranty of merchantability "requires only that the goods sold be of a minimal level of quality," so that they are "fit for the ordinary purposes for which such goods are used." *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 433 (2d Cir. 2013) (applying New York law). In cases involving food products, this requires the plaintiff to allege that the product was "unfit to be consumed." *Brumfield*, 2018 WL 4168956 at *4; *see also Ruggiero v. Perdue Poultry Co.*, No. 96-4929, 1997 WL 811530, at *1 (S.D.N.Y. Sept. 29, 1997) ("The product must have been actually unfit for human consumption or defective at the time it left the possession or control of the manufacturer."). Here, Plaintiff does not allege that Keebler Grahams were contaminated or otherwise unfit for consumption; instead, she alleges that they are mislabeled because they suggest that graham flour is the predominant ingredient, even though they contain more enriched flour than graham flour.  That is woefully insufficient to establish a breach of the implied warranty of merchantability, and the Court should accordingly dismiss this claim.

### III.    Plaintiff Fails to State a Claim Under the Illinois Consumer Fraud Act Because There Is No Nexus Between Her Alleged Injuries and the State of Illinois.

Whether or not Plaintiff's theory of deception is sufficient to state a claim under New York's consumer protection statutes, she cannot state a claim under the Illinois Consumer Fraud Act. The Illinois Supreme Court has "severely limited the extraterritorial reach of the ICFA," such that "nonresident plaintiffs may sue under the ICFA only if the circumstances relating to the alleged fraudulent transaction occurred mostly in Illinois." *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.D.2d 801, 852-53 (Ill. 2005)). Many courts have applied this rule in dismissing ICFA claims brought on behalf of non-Illinois plaintiffs when the alleged deception did not occur in Illinois.[2]

*Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666 (E.D.N.Y. 2017), is particularly instructive. There, a New York resident alleged that he purchased Foster's beer in New York in reliance on allegedly misleading advertising he viewed in New York, and he brought a putative class action against MillerCoors in the Eastern District of New York. *Id.* at 676-77. The court dismissed his ICFA claim. The court observed that the "ICFA's territorial reach is extremely limited," and it held that the "weak connection between the relevant transaction and the State of Illinois" prohibited a New York resident from bringing an ICFA claim based on purchases that took place outside of Illinois. *Id.* Like *Nelson*, this case involves a New York resident who purchased Keebler Grahams in New York in alleged reliance on packaging she viewed in New

---

[2] *See, e.g.*, *Haught v. Motorola Mobility, Inc.,* No. 12-2515, 2012 WL 3643831, at *4 (N.D. Ill. Aug. 23, 2012) (dismissing ICFA claim based on alleged misrepresentations "designed in Illinois and disseminated from a website registered and hosted in Illinois" when the plaintiff purchased his phone "from a third-party vendor outside of the State of Illinois" and never alleged that he viewed any of Motorola's allegedly misleading statements in Illinois); *Phillips v. Bally Total Fitness Holding Corp.*, 865 N.E.2d 310, 315-16 (Ill. Ct. App. 2007) (holding that the plaintiffs did not have standing to sue Bally under the ICFA when they bought gym memberships and used Bally gyms in Colorado and Missouri).

York. *See* Compl. ¶¶ 34-36. Absent *any* connection between her transaction and the State of Illinois, this Court must dismiss her ICFA claim.

## IV.    **Plaintiff Fails to Allege the Fraudulent Intent Necessary to Plead a Claim for Fraud.**

To state a claim for fraud under New York law, "a plaintiff must allege 'a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury.'" *McBeth v. Porges*, 171 F. Supp. 3d 216, 225 (S.D.N.Y. 2016) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006)). A plaintiff must *also* "plead scienter, or fraudulent intent." *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 73 (E.D.N.Y. 2017).

Plaintiff alleges that Kellogg's "purpose was to mislead consumers who seek products with more nutrients and higher quality ingredients which confer health benefits" and that its "intent was to secure economic advantage in the marketplace against competitors." Compl. ¶¶ 70-71. But as other courts in New York have made clear, "[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendant's 'generalized motive to satisfy consumers' desires [or] increase sales and profits.'" *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018) (quoting *In re Frito-Lay N. Am., Inc. All. Natural Litig.*, No. 12-2413, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013)); *see also, e.g., Quiroz v. Beaverton Foods, Inc.*, No. 17-7348, 2019 WL 1473088, at *10 (E.D.N.Y. Mar. 31, 2019) (holding allegation that defendant had "a motive to misrepresent whether the Product contained preservatives in order to gain a marketing advantage" did not establish scienter); *Rodriguez v. It's Just Lunch, Int'l*, No. 07-9227, 2010 WL 685009, at *6 (S.D.N.Y. Feb. 23, 2010) ("[A] desire to increase company profits cannot, standing alone, be a sufficient basis on which to predicate a fraud claim, lest every company be vulnerable to allegations of fraud."). As in these cases, the absence of any factual

allegations suggesting Kellogg acted with fraudulent intent requires that this Court dismiss Plaintiff's claim for fraud.

**V.     New York's Economic Loss Rule Bars Plaintiff's Negligent Misrepresentation Claim.**

Under New York's economic loss doctrine, a plaintiff who has "suffered economic loss, but not personal or property injury," may not recover in tort if she has non-tort remedies available. *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (citation and internal quotation marks omitted); *see also Elkind v. Revlon Consumer Prods. Corp.*, No. 14-2484, 2015 WL 2344134, at *12 (E.D.N.Y. May 14, 2015) (dismissing negligent misrepresentation claim pursuant to the economic loss doctrine); *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009) (same).  Here, Plaintiff cannot seek a tort remedy for negligent misrepresentation because she has other non-tort causes of action available to her.

While a plaintiff can sidestep the economic loss doctrine by alleging a "special relationship" with the defendant, such a special relationship does not arise in the context of an ordinary, arms-length sale of consumer products.  *See, e.g.*, *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-3826, 2015 WL 5579872, at *23-26 (E.D.N.Y. Sept. 22, 2015) (dismissing claim for negligent misrepresentation based on sale of allegedly mislabeled Greek Yogurt); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-5029, 2015 WL 2168374, at *14 (S.D.N.Y. 2015) (dismissing negligent misrepresentation claim based on allegedly mislabeled "natural" and "organic" products and noting that "Defendant's obligation to label products truthfully does not arise from any special relationship").  Plaintiff alleges no damages beyond pure economic loss and pleads no facts suggesting that her purchase of the Keebler Grahams was anything other than a routine commercial transaction.  Her claim for negligent misrepresentation is not cognizable under New York law.

## VI.   Plaintiff Fails to State a Claim for Unjust Enrichment.

Under New York law, "[a]n unjust enrichment claim 'is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).  Rather, such a claim is viable only in "unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.*  As this Court has recognized, *Corsello* bars plaintiffs from "bring[ing] an unjust enrichment claim as a catch-all cause of action . . . ." *Mahoney v. Endo Health Solutions, Inc.*, No. 15-9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016).  And other courts in New York regularly dismiss unjust enrichment claims as duplicative when they are based on the same factual allegations as other tort claims.  *See, e.g.*, *Ebin v. Kangadis Food Inc.*, No. 13-2311, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013) (dismissing unjust enrichment claim where "plaintiffs have failed to explain how their unjust enrichment claim is not merely duplicative of their other causes of action"); *Hidalgo v. Johnson & Johnson Consumer Cos.*, 148 F. Supp. 3d 285, 298 (S.D.N.Y. 2015) (same).

Here, Plaintiff's unjust enrichment claim simply alleges that Kellogg "obtained benefits and monies because the Products were not as represented and expected . . . ." Compl. ¶ 74.  That claim is entirely duplicative of her remaining claims, and it accordingly fails as a matter of law.

## VII.   Plaintiff Lacks Standing to Seek Injunctive Relief.

It is well-established that a plaintiff must "demonstrate standing for each claim and form of relief sought." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (citing *Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003)).  "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way."

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citing *DeShawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344-45 (2d Cir. 1988)); *see generally City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983).

Federal courts in New York have repeatedly applied this principle to conclude that a consumer cannot seek injunctive relief once she has learned of a manufacturer's allegedly "deceptive" advertising, as there is no likelihood that she will be similarly deceived in the future. *See, e.g.*, *Davis*, 297 F. Supp. 3d at 339 ("To the extent that plaintiff was deceived by defendants' products, he is now aware of the truth and will not be harmed again in the same way."); *Elkind*, 2015 WL 2344134, at *3 (same); *Atik v. Welch Foods, Inc.*, No. 15-5405, 2016 WL 5678474, at *5 (E.D.N.Y. Sept. 30, 2016) (collecting cases holding that, "because the plaintiffs were aware of the deceptive advertising and were unlikely to be deceived in the future, the plaintiffs failed to allege a risk of future harm").  That rule applies with equal force here: now that Plaintiff knows that graham flour is not the predominant ingredient in Keebler Grahams, there is no risk that she will be "deceived" by Kellogg's advertising in the future.

The fact that Plaintiff purports to represent a class of Keebler Grahams purchasers does not change this result.  "[S]tanding cannot be acquired through the back door of a class action." *Hidalgo*, 148 F. Supp. 3d at 292 (citation and internal quotation marks omitted).  Instead, as the Second Circuit has made clear, the named class representatives "must allege and show that they have personally been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).  Thus, even if other class members may not know that graham flour is not the predominant ingredient in Keebler Grahams, that is not

enough to establish Article III standing: "[t]here is no exception to demonstrating future injury when the plaintiff is pursuing a class action," and "the named plaintiff[] must have standing in order to seek injunctive relief on behalf of the class." *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016); *see also Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) ("[T]he fact that unknowing class members might purchase [the challenged] products based on the defendants' allegedly unlawful advertising does not establish standing.").

Plaintiff's allegation that she would "purchase the Products again if there were assurances that the Products' representations were no longer misleading," (Compl. ¶ 38), is similarly unavailing. This type of "conditional statement" does not establish Article III standing; to the contrary, it establishes that Plaintiff *will not* purchase the product so long as it lacks "graham flour" as its first ingredient and makes clear that there is no risk of future harm. *See Izquierdo v. Mondelēz Int'l, Inc.*, No. 16-4697, 2016 WL 6459832, at *5 (S.D.N.Y. Oct. 26, 2016). Many courts in New York have rejected similar efforts to establish standing, and this Court should do likewise.[3]

## VIII.   The Court Lacks Personal Jurisdiction Over Claims of Non-Resident Class Members.

Finally, even if Plaintiff's allegations are sufficient to support personal jurisdiction over the claims of putative class members who allegedly purchased Keebler Grahams in New York, her complaint contains *no* facts that support personal jurisdiction over Kellogg as to claims arising out of the purchase of Keebler Grahams by non-New York consumers. The Supreme Court has long held that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's

---

[3] *See, e.g.*, *Holve v. McCormick & Co.*, 334 F. Supp. 3d 535, 552 (W.D.N.Y. 2018) (holding that the plaintiff lacked standing to seek injunctive relief notwithstanding her allegation that "she 'would purchase the Product again if it was not misbranded'"); *In re Edgewell Personal Care Co. Litig.*, No. 16-3371, 2018 WL 7858623, at *15 (E.D.N.Y. Sept. 4, 2018) (holding allegation that "plaintiffs . . . 'would purchase the product again in the future if they could be assured that the product was accurately labeled'" were "insufficient to establish standing for injunctive relief").

assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984).  The Supreme Court has recently applied that principle to hold that a court cannot exercise specific personal jurisdiction over the claims of nonresident class members whose injuries did not take place in the forum state.  *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017).

In *Bristol-Myers Squibb*, the plaintiffs — most of whom were not California residents — sued Bristol-Meyers Squibb, a non-California corporation, in California state court for alleged injuries arising out of their use of the drug Plavix.  *Id.* at 1778.  The Supreme Court held that the California state courts could not exercise specific personal jurisdiction over the claims of non-resident plaintiffs, as they "were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California.  *Id.* at 1781.  In so holding, the Court emphasized that "[t]he mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California — and allegedly sustained the same injuries as did the nonresidents — does not allow the State to assert specific jurisdiction over the nonresidents' claims."  *Id.*  "What is missing," the Court concluded, "is a connection between the forum and the specific claims at issue."  *Id.*

Like the plaintiffs in *Bristol-Myers Squibb,* Plaintiff seeks to assert claims on behalf of class members outside of New York against Kellogg — which is not a New York resident — based on purchases that took place in other states.  Under similar circumstances, courts around the country have applied *Bristol-Myers Squibb* to conclude that they could not exercise personal jurisdiction over the claims of non-resident class members against a non-resident defendant.  *See, e.g.*, *Spratley v. FCA US LLC*, No. 17-62, 2017 WL 4023348, at *7 (N.D.N.Y. Sept. 12, 2017)

(applying *Bristol-Myers Squibb* to hold that "the Court lacks specific jurisdiction over the out-of-state Plaintiffs' claims" when they "have shown no connection between their claims and Chrysler's contacts with New York"); *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 864 (N.D. Ill. 2018) (dismissing "the claims of the non-Illinois-resident class members" and holding that *Bristol-Myers Squibb* precluded the exercise of personal jurisdiction over those class members, as their "claims do not relate to defendants' contacts with Illinois"). Here, as in those cases, *Bristol-Myers Squibb* precludes this Court's exercise of personal jurisdiction over the claims of non-resident class members.

## CONCLUSION

For the foregoing reasons, this Court should grant Kellogg's motion to dismiss.


Dated:  June 10, 2019                    Respectfully submitted,

                                         JENNER & BLOCK LLP

                                         By:_____/s/_____
                                         Elizabeth A. Edmondson (N.Y. Reg. 4705539)
                                         Dean N. Panos (*pro hac vice* pending)
                                         Alexander M. Smith (*pro hac vice* pending).

                                         Attorneys for Defendant
                                         Kellogg Sales Company