UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WANDA WATSON, JESSICA MCCLAIN, STEPHEN MATEJOV, LEROY JACOBS, HAROLD MICHAEL, JENNIFER STEPHENS, and JANE DOE, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>KELLOGG SALES COMPANY,<br><br>     Defendant. | Case No. 1:19-cv-1356-DLC<br><br>The Honorable Denise L. Cote |

## MEMORANDUM OF LAW IN SUPPORT OF KELLOGG SALES COMPANY'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

**JENNER & BLOCK LLP**

Elizabeth A. Edmondson (N.Y. Reg. 4705539)
eedmondson@jenner.com
919 Third Avenue
New York, NY 10022
Tel.: (212) 891-1600
Fax: (212) 891-1699

Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
Fax: (312) 527-0484

Alexander M. Smith (*pro hac vice*)
asmith@jenner.com
633 West 5th Street
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199

*Attorneys for Defendant*
Kellogg Sales Company

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

ALLEGATIONS OF THE COMPLAINT ................................................................... 3

ARGUMENT .............................................................................................................. 4

    I.     Plaintiffs Have Not Plausibly Alleged That Keebler Grahams'
           Labeling Is Deceptive ......................................................................... 5

          A.     The Phrase "Keebler Grahams" Is Not Misleading as a
                   Matter of Law ...................................................................... 6

          B.     The Labeling of the "Honey" Flavor Is Also Not Misleading ............. 11

    II.    Plaintiffs Have Not Plausibly Alleged Any FDA Regulatory
           Violations ........................................................................................... 12

    III.   Plaintiffs Fail to State a Plausible Breach-of-Warranty Claim ....................... 16

          A.     Plaintiffs' Express Warranty Claim Fails for Lack of Pre-
                   Suit Notice .......................................................................... 17

          B.     Plaintiffs' Magnuson-Moss Warranty Act Claim Fails
                   Because "Grahams" Does Not Satisfy the Statute's
                   Definition of a "Written Warranty" ..................................... 17

          C.     Plaintiffs' Implied Warranty Claim Fails Because Keebler
                   Grahams Are Fit for Consumption ....................................... 18

    IV.   Plaintiffs Fail to Allege the Fraudulent Intent Necessary to Plead a
           Claim for Fraud ................................................................................. 19

    V.    New York's Economic Loss Rule Bars Plaintiffs' Negligent
           Misrepresentation Claim ..................................................................... 20

    VI.   Plaintiffs Fail to State a Claim for Unjust Enrichment ................................... 21

    VII.  Plaintiffs Lack Standing to Seek Injunctive Relief .......................................... 21

    VIII. The Court Lacks Personal Jurisdiction Over Claims of Non-
           Resident Class Members ..................................................................... 23

CONCLUSION ........................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps;">CASES</span>

*Ackerman v. Coca-Cola Co.*,
No. 09-395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010)......................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................4, 5

*Atik v. Welch Foods, Inc.*,
No. 15-5405, 2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016) .................................22

*Axon v. Citrus World, Inc.*,
354 F. Supp. 3d 170 (E.D.N.Y. 2018) ...............................................................16

*Baur v. Veneman*,
352 F.3d 625 (2d Cir. 2003)..............................................................................21

*Belfiore v. Procter & Gamble Co.*,
311 F.R.D. 29 (E.D.N.Y. 2015) ..........................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................4, 5

*Biro v. Condé Nast*,
807 F.3d 541 (2d Cir. 2015)................................................................................4

*Bowling v. Johnson & Johnson*,
65 F. Supp. 3d 371 (S.D.N.Y. 2014)..............................................................17, 18

*Brazil v. Dole Food Co.*,
935 F. Supp. 2d 947 (N.D. Cal. 2013) ..........................................................13, 18

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017)..................................................................................24, 25

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005)..............................................................................12

*Brumfield v. Trader Joe's Co.*,
No. 17-3239, 2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018)......................11, 12, 19

*Buonasera v. Honest Co.*,
208 F. Supp. 3d 555 (S.D.N.Y. 2016).................................................................23

*Cacchillo v. Insmed, Inc.*,
    638 F.3d 401 (2d Cir. 2011)..............................................................................21

*Caronia v. Phillip Morris USA, Inc.*,
    715 F.3d 417 (2d Cir. 2013)..............................................................................18

*Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed
    Care, L.L.C.*,
    433 F.3d 181 (2d Cir. 2005)..............................................................................22

*Cherny v. Emigrant Bank*,
    604 F. Supp. 2d 605 (S.D.N.Y. 2009)...............................................................20

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)............................................................................................22

*Coe v. Gen. Mills, Inc.*,
    No. 15-5112, 2016 WL 4208287 (N.D. Cal. Aug. 10, 2016) ......................13, 14

*Cohen v. JPMorgan Chase & Co.*,
    498 F.3d 111 (2d Cir. 2007)................................................................................5

*Colella v. Atkins Nutritionals, Inc.*,
    348 F. Supp. 3d 120 (E.D.N.Y. 2018) ..............................................................17

*Conboy v. AT&T Corp.*,
    241 F.3d 242 (2d Cir. 2001)..............................................................................12

*Corsello v. Verizon N.Y., Inc.*,
    18 N.Y.3d 777 (2012) .......................................................................................21

*Daniel v. Mondelēz Int'l, Inc.*,
    287 F. Supp. 3d 177 (E.D.N.Y. 2018) ................................................................5

*Davis v. Hain Celestial Grp., Inc.*,
    297 F. Supp. 3d 327 (E.D.N.Y. 2018) .........................................................19, 22

*Ebin v. Kangadis Food Inc.*,
    No. 13-2311, 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) ...................................21

*Elkind v. Revlon Consumer Prods. Corp.*,
    No. 14-2484, 2015 WL 2344134 (E.D.N.Y. May 14, 2015)...........................20, 22

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)...........................................................................5, 8

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ............................................................................8, 9

*Greene v. Gerber Prods. Co.*,
   262 F. Supp. 3d 38 (E.D.N.Y. 2017) ....................................................................19

*Gubala v. Allmax Nutrition, Inc.*,
   No. 14-9299, 2015 WL 6460086 (N.D. Ill. Oct. 26, 2015) ....................................16

*Hairston v. S. Beach Beverage Co.*,
   No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ...................................18

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984)................................................................................................24

*Hidalgo v. Johnson & Johnson Consumer Cos.*,
   148 F. Supp. 3d 285 (S.D.N.Y. 2015)..............................................................21, 22

*Holve v. McCormick & Co.*,
   334 F. Supp. 3d 535 (W.D.N.Y. 2018).................................................................23

*In re 100% Grated Parmesan Mktg. & Sales Practices Litig.*,
   275 F. Supp. 3d 910 (N.D. Ill. 2017) ........................................................5, 8, 9, 10

*In re Edgewell Personal Care Co. Litig.*,
   No. 16-3371, 2018 WL 7858623 (E.D.N.Y. Sept. 4, 2018) ...................................23

*In re Frito-Lay N. Am., Inc. All. Natural Litig.*,
   No. 12-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) .......................2, 18, 19

*In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.*,
   588 F. Supp. 2d 527 (S.D.N.Y. 2008)..................................................................15

*In re Sears, Roebuck & Co.*,
   No. 05-4742, 2006 WL 1443737 (N.D. Ill. May 17, 2006)...................................18

*Izquierdo v. Mondelēz Int'l, Inc.*,
   No. 16-4697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016)..................................23

*Kelly v. Cape Cod Potato Chip Co.*,
   81 F. Supp. 3d 754 (W.D. Mo. 2015) ....................................................................7

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006)..................................................................................19

*Mahoney v. Endo Health Solutions, Inc.*,
   No. 15-9841, 2016 WL 3951185 (S.D.N.Y. July 20, 2016).................................21

*Mantikas v. Kellogg Company*,
   910 F.3d 633 (2d Cir. 2018)............................................................................10, 11

*McBeth v. Porges*,
    171 F. Supp. 3d 216 (S.D.N.Y. 2016) ................................................................19

*McKinnis v. Kellogg USA*,
    No. 07-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ...................................6

*McMorrow v. Mondelēz Int'l, Inc.*,
    No. 17-2327, 2018 WL 5024840 (S.D. Cal. Oct. 17, 2018) ....................................14

*Nashville Syrup Co. v. Coca Cola Co.*,
    215 F. 527 (6th Cir. 1914) ........................................................................................6

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016) ....................................................................................22

*Parks v. Ainsworth Pet Nutrition, LLC*,
    377 F. Supp. 3d 241 (S.D.N.Y. Apr. 18, 2019) ......................................................5

*Paulino v. Conopco, Inc.*,
    No. 14-5145, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ..................................17

*PDK Labs, Inc. v. Friedlander*,
    105 F.3d 1108 (2d Cir. 1997) ..................................................................................12

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v.*
    *Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) ................................................................................4, 5

*Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*,
    301 F. Supp. 3d 840 (N.D. Ill. 2018) ......................................................................25

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 533 (S.D.N.Y. 2013) ....................................................................17

*Rodriguez v. It's Just Lunch, Int'l*,
    No. 07-9227, 2010 WL 685009 (S.D.N.Y. Feb. 23, 2010) ....................................20

*Ruggiero v. Perdue Poultry Co.*,
    No. 96-4929, 1997 WL 811530 (S.D.N.Y. Sept. 29, 1997) ...................................19

*Salters v. Beam Suntory, Inc.*,
    No. 14-659, 2015 WL 2124939 (N.D. Fla. May 1, 2015) ........................................6

*Segedie v. Hain Celestial Grp., Inc.*,
    No. 14-5029, 2015 WL 2168374 (S.D.N.Y. 2015) ................................................20

*Singleton v. Fifth Generation, Inc.*,
    No. 15-474, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) ......................................17

*Smith v. Local 819 I.B.T. Pension Plan*,
   291 F.3d 236 (2d Cir. 2002)........................................................................4

*Solak v. Hain Celestial Grp., Inc.*,
   No. 17-704, 2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018)......................16

*Spratley v. FCA US LLC*,
   No. 17-62, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017)......................25

*Stiles v. Trader Joe's Co.*,
   No. 16-4318, 2017 WL 3084267 (C.D. Cal. Apr. 4, 2017) ......................12

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
   No. 14-3826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ..................20

*Tomasino v. Estee Lauder Cos.*,
   44 F. Supp. 3d 251 (E.D.N.Y. 2014) ......................................................23

*Trujillo v. Apple Computer, Inc.*,
   581 F. Supp. 2d 935 (N.D. Ill. 2008) ........................................................8

*Warth v. Seldin*,
   422 U.S. 490 (1975)................................................................................22

*Weinstein v. eBay, Inc.*,
   819 F. Supp. 2d 219 (S.D.N.Y. 2011)........................................................5

*Weisblum v. Prophase Labs, Inc.*,
   88 F. Supp. 3d 283 (S.D.N.Y. 2015)........................................................20

*Werbel v. Pepsico, Inc.*,
   No. 09-4456, 2010 WL 2673860 (N.D. Cal. July 2, 2010) ......................6

*Workman v. Plum Inc.*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015) ............................................10, 11

## STATUTES

15 U.S.C. § 2301(6) ....................................................................................18

15 U.S.C. § 2310(d)(3)(A) ..........................................................................18

21 U.S.C. § 343-1(a) ...................................................................................15

N.Y. G.B.L. § 349 .........................................................................................5

N.Y. G.B.L. § 350 .........................................................................................5

N.Y. U.C.C. § 2-607(3)(a) ...........................................................................17

**OTHER AUTHORITIES**

21 C.F.R. § 100.1(c)(4) ........................................................................................................15

21 C.F.R. § 101.3(b) ...........................................................................................................13

21 C.F.R. § 101.9(c) ...........................................................................................................14

21 C.F.R. § 101.13(b) ....................................................................................................13, 14

21 C.F.R. § 101.18(b) .................................................................................................2, 15, 16

21 C.F.R. § 101.54(c) ....................................................................................................12, 14

21 C.F.R. § 101.65 ..............................................................................................................12

21 C.F.R. § 137.200 ..............................................................................................................3

https://www.dictionary.com/browse/pound-cake (last visited July 15, 2019) ................................7

**<u>INTRODUCTION</u>**

Kellogg does not represent that Keebler Grahams are healthy, nutritious, or low in sugar. Nor does the packaging of Keebler Grahams call attention to the presence of whole grains. But Plaintiffs nonetheless claim that the iconic name "Keebler Grahams" conveys the misleading impression that these cookies are made primarily with "graham flour," rather than enriched white flour. The premise of Plaintiffs' putative class action is implausible and merits dismissal.

Plaintiffs' allegation that the name "Keebler Grahams" is a statement about the *ingredients* in the product ignores context and common sense, which the Supreme Court has specifically directed district courts to consider in determining whether a complaint states a plausible claim for relief. It is commonly understood that a "graham cracker" is a honey-colored cookie with a characteristic sweet taste, often in a perforated rectangular shape. Reasonable consumers would accordingly associate the name "Keebler Grahams" with the *type* of cookie — not with the presence of "graham flour."

At best, Plaintiffs establish that the phrase "Keebler Grahams" may be ambiguous and that consumers may interpret this term in different ways. But as many courts have held, an ambiguous labeling statement is not deceptive if the remainder of the label, viewed as a whole, would cure that ambiguity. If a consumer was unsure whether graham flour was the predominant ingredient in Keebler Grahams, the ingredient list would make clear that it is not. Despite Plaintiffs' suggestion to the contrary, this is not a case where Kellogg prominently touts the presence of graham flour on its products, only to correct this misstatement in the ingredient list. Indeed, it is doubtful that most consumers even know what "graham flour" is — let alone that they decide to buy these cookies due to their perception about the amount of "graham flour" the cookies contain.

Although Plaintiffs' First Amended Complaint also alleges that Kellogg has violated the FDA's food labeling regulations, those new allegations are equally unfounded. The FDA has not established a standard of identity for graham crackers, and it does not define the amount of "graham flour" (if any) that a graham cracker must contain. The name "grahams" (which appears in immediate proximity to the term "crackers") satisfies the requirement that a food product must be labeled either with its "common or usual name" or another "appropriately descriptive term." Nor does the labeling violate 21 C.F.R. § 101.18(b), as the term "grahams" does not suggest that graham flour is the sole ingredient (or even the sole grain source) in the product. "Grahams" is plainly not a nutrient content claim: it does not contain a direct statement about the level of any nutrient in Keebler Grahams, does not suggest that any nutrient is absent or present in a certain amount, and does not suggest that Keebler Grahams may be useful in maintaining healthy dietary practices. And while Plaintiffs assert Kellogg must warn consumers that Keebler Grahams are "not a good source of fiber," any such labeling requirement is plainly preempted by federal law.

Additionally, *all* of Plaintiffs' remaining claims suffer from independent, fatal defects that require their dismissal:

- The breach of express warranty claim fails for lack of pre-suit notice to Kellogg;

- The claim under the Magnuson-Moss Warranty Act fails, as the term "grahams" does not represent that Keebler Grahams are "defect free" or that they will "meet a specified level of performance over a specified period of time," and the amount at issue in each individual claim does not meet the statute's jurisdictional minimum of $25;

- The breach of implied warranty claim fails because the Keebler Grahams are plainly not unfit for consumption, as would be required to state a breach of implied warranty claim;

- The negligent misrepresentation claim is barred by New York's economic loss rule;

- The common-law fraud claim is totally devoid of any plausible allegation of scienter; and

- The unjust enrichment claim is entirely duplicative of Plaintiffs' other claims.

Finally, regardless of whether Plaintiffs can seek damages on behalf of putative class members, they lack standing to seek injunctive relief: now that they are aware that Keebler Grahams contain more enriched flour than graham flour, there is no further risk that they will be "deceived."  And while they purport to assert their claims on behalf of a nationwide class, recent Supreme Court precedent makes clear that this Court cannot exercise personal jurisdiction over the claims of non-resident class members whose alleged injuries have no connection to New York.

## ALLEGATIONS OF THE COMPLAINT

Kellogg manufactures and sells Keebler Grahams — rectangular, thin, crunchy graham crackers — in three flavors: Original, Honey, and Cinnamon.  *See* FAC ¶ 5.  The front of each label depicts the graham cracker, along with the Keebler elf and the name "Keebler Grahams."  *Id.*

Plaintiffs claim that the labeling of "Keebler Grahams" misleads consumers into believing that the products are predominantly made from "graham flour," which is a type of coarse-ground wheat flour.  *See id.* ¶ 6; *see also* 21 C.F.R. § 137.200 (FDA regulation defining "whole wheat flour," and other synonyms, including "graham flour").  The Keebler Grahams label does not state that the crackers are "made with graham flour."   In fact, the only location where the phrase "graham flour" appears on the box is in the ingredient list, which lists "graham flour" after "enriched flour" — thereby truthfully disclosing that graham flour is not the predominant grain in Keebler Grahams.  *See* FAC ¶ 18.  Thus, the gravamen of Plaintiffs' claim is that the very name of the products — "Keebler Grahams" — suggests that they predominantly contain graham flour, which consumers supposedly perceive as healthier than enriched white flour.  *See id.* ¶ 10.

3

Plaintiffs claim Kellogg's practice of "passing off" graham crackers made with inferior flour is deceptive and allows Kellogg to charge a "premium price." *Id.* ¶¶ 50-56.

This lawsuit initially asserted statutory consumer fraud claims under New York and Illinois law, as well as common-law claims for breach of express and implied warranty, negligent misrepresentation, fraud, and unjust enrichment. *See* ECF No. 1. Plaintiffs' amended complaint now purports to assert these claims under the laws of all fifty states on behalf of a nationwide class of Keebler Grahams consumers, as well as subclasses for each state.[1] *See* FAC ¶¶ 74, 83-114. Plaintiffs seek a variety of remedies on behalf of the putative class, including damages and injunctive relief. *Id.* at 19.

## ARGUMENT

Under Rule 12(b)(6), "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (citation and internal quotation marks omitted). Rather, to survive a motion to dismiss, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Importantly, a court must "draw on its judicial experience and *common sense*" in ruling on a motion to dismiss. *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) (emphasis added). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

---

[1] Although Plaintiffs purport to assert claims on behalf of consumers in all fifty states, the named Plaintiffs in the First Amended Complaint are from New York, Idaho, Washington, Illinois, Kansas, and California—not any other states. *See* FAC ¶¶ 62-67, 75. The First Amended Complaint also names "Jane Doe" as a "placeholder" for "citizens of the 44 states for which the identity of a named plaintiff has not been disclosed . . . ." *Id.* ¶¶ 68-69.

the complaint . . . has not 'show[n]' . . . that the pleader is entitled to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679) (alteration in original).  Rather, a plaintiff must "allege more by way of factual content to 'nudg[e] his claim'" of unlawful action "'across the line from conceivable to plausible.'" *Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570); *see also Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019) (applying this principle to dismiss "implausible" claim premised on "absolutist" interpretation of challenged labeling statements).

## I.    <u>Plaintiffs Have Not Plausibly Alleged That Keebler Grahams' Labeling Is Deceptive.</u>

The consumer fraud statutes at issue in this case — including Sections 349 and 350 of the New York General Business Law, as well as analogous consumer fraud statutes enacted by other states — all require Plaintiffs to show that Kellogg's allegedly misleading statements "were likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *see also In re 100% Grated Parmesan Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 920 (N.D. Ill. 2017) (noting that state consumer fraud statutes "differ in certain particulars," but "all share a common requirement: to state a claim, a plaintiff must allege conduct that plausibly could deceive a reasonable consumer").

The "applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled . . . ." *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011).  This is an "objective" standard, which is not defined by the unique views of the particular consumer before the Court.  *Cohen v. JPMorgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007). Consistent with the Supreme Court's admonition in *Iqbal*, this Court must apply "common sense" in determining whether Plaintiffs have stated a plausible claim of deception.  556 U.S. at 679; *see also Daniel v. Mondelēz Int'l, Inc.*, 287 F. Supp. 3d 177, 194 (E.D.N.Y. 2018) ("A reasonable consumer does not lack common sense.").

A.      The Phrase "Keebler Grahams" Is Not Misleading as a Matter of Law.

Plaintiffs' lawsuit is premised on the allegation that they interpreted the phrase "Keebler Grahams" to mean that "graham flour," rather than enriched white flour, was the predominant ingredient in the product.  But nothing about the *product name* "Keebler Grahams" would suggest that the product is made with a specific type of flour, let alone that it is the predominant type of flour in the product.  Instead, it communicates that Keebler Grahams are *graham crackers*, which consumers associate with a characteristic shape, color, texture, and flavor.  The Sixth Circuit recognized this basic point over a century ago:

> The use of a compound name does not necessarily indicate that the article to which the name is applied contains the substances whose names make up the compound.  Thus, soda water contains no soda; the butternut contains no butter; cream of tartar contains no cream; nor milk of lime any milk.  Grape fruit is not the fruit of the grape; nor is bread fruit the fruit of bread; the pineapple is foreign to both the pine and the apple; and the manufactured food known as Grape Nuts contains neither grapes nor nuts.

*Nashville Syrup Co. v. Coca Cola Co.*, 215 F. 527, 532 (6th Cir. 1914).  That holding is consistent with more recent cases that have rejected consumer class actions premised on a similarly unreasonable, hyper-literal interpretation of the name of a food product.  *See, e.g.*, *Werbel v. Pepsico, Inc.*, No. 09-4456, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (dismissing lawsuit challenging "Crunch Berries" cereal, as "no reasonable consumer would believe that Cap'n Crunch derives any nutritional value from berries"); *McKinnis v. Kellogg USA*, No. 07-2611, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) ("No reasonable consumer would view the trademark "FROOT LOOPS" name as describing the ingredients of the cereal.").

Plaintiffs' reliance on the dictionary definition of "graham cracker" to suggest the presence of graham flour is mistaken.  A dictionary definition of a term is not necessarily probative of what a reasonable consumer would believe — particularly when the dictionary definition would result in an unrealistic interpretation of a labeling statement.  *See, e.g.*, *Salters v. Beam Suntory, Inc.*, No.

14-659, 2015 WL 2124939, at *2 (N.D. Fla. May 1, 2015) (dismissing claim against manufacturer of Maker's Mark bourbon and holding that dictionary definition of "handmade" was implausible as applied to mass-produced whiskey); *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 760 (W.D. Mo. 2015) ("The Merriam-Webster definition offered by Plaintiffs for the term 'natural' . . . is not plausible because the Chips are processed foods, which of course do not exist or occur in nature.").  The dictionary definition of "graham crackers" reflects nothing more than the term's history and etymology — not what reasonable consumers in 2019 believe.  Just as a reasonable consumer would not believe that a "pound cake" necessarily contains a pound of sugar, a pound of flour, and a pound of butter[2], a reasonable consumer would likewise not believe that a "graham cracker" necessarily contains graham flour, let alone that it is the predominant ingredient.

Plaintiffs' allegations that consumers understand graham crackers to be distinct from cookies, (*see* FAC ¶¶ 12-16), are similarly unavailing.  Although Plaintiffs allege that "[a]verage Americans fondly recall graham crackers being a hearty snack . . . as opposed to a dessert," (*id.* ¶ 15), they ignore the fact that graham crackers are commonly consumed in desserts: they can be eaten alone, with chocolate or marshmallows as a s'more, or crushed and made into crusts for cheesecakes and key lime pie.  At best, these allegations establish that consumers view graham crackers as being a somewhat healthier option than other types of cookies and that they expect graham crackers to contain less sugar and refined white flour.  But that does not come close to establishing that reasonable consumers expect "graham flour" to be the predominant grain source in graham crackers — or even that they know what "graham flour" is.[3]

---

[2] *See* https://www.dictionary.com/browse/pound-cake (last visited July 15, 2019) (defining "pound cake" as "a rich, sweet cake made originally with approximately a pound each of butter, sugar, and flour").

[3] Likewise, the fact that graham crackers sold in the "institutional context" may have more graham flour than white flour, (*see* FAC ¶¶ 24-28), has no bearing on whether a reasonable consumer

Even if Plaintiffs' allegations were sufficient to establish that the term "Keebler Grahams" is ambiguous, that is not nearly enough to establish that this term is deceptive.  "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial," and "the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Fink*, 714 F.3d at 742.  Consistent with that admonition, many courts have dismissed claims premised on an arguably ambiguous labeling statement when the remainder of the package eliminated any ambiguity about the challenged labeling statement. *See, e.g.*, *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) ("Courts view each allegedly misleading statement in light of its context . . . . The entire mosaic is viewed rather than each tile separately.") (citations and internal quotation marks omitted); *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (affirming dismissal of false advertising lawsuit where "[a]ny ambiguity that [the plaintiff] would read into any particular statement is dispelled by the promotion as a whole"); *Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935, 938 (N.D. Ill. 2008) ("If other information disclosed or available to the consumer dispels any tendency to deceive, there is no deception.").

*In re 100% Grated Parmesan* is particularly instructive.  There, the plaintiffs claimed that the phrase "100% Grated Parmesan Cheese" was misleading because it falsely implied that the product *only* contained grated parmesan cheese, even though it also contained small amounts of cellulose and potassium sorbate.  275 F. Supp. 3d at 914-16.  The court held that the plaintiffs had not stated a plausible claim of deception.  After surveying false advertising case law from around the country (including New York), the court synthesized these cases into the following rule:

---

would necessarily expect a graham cracker sold in a grocery store to contain more graham flour than white flour.  Plaintiffs do not articulate why the procurement standards used by institutional consumers are probative of reasonable consumer expectations, and their suggestion that Kellogg uses graham crackers with higher graham flour content in schools to bait consumers into buying graham crackers with lower graham flour content when they become adults is sheer speculation.

"Where a plaintiff contends that certain aspects of a product's packaging are misleading in isolation, but an ingredient label or other disclaimer would dispel any confusion, the crucial issue is whether the misleading content is ambiguous; if so, context can cure the ambiguity and defeat the claim, but if not, then context will not cure the deception and the claim may proceed." *Id.* at 922. In other words, it explained, "consumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight . . . ." *Id.*

Applying this rule, the court concluded that the statement "100% Grated Parmesan Cheese" was ambiguous: even if a consumer *might* interpret this statement to mean that the product contained no ingredients other than parmesan cheese, the court reasoned, a consumer might also interpret it to mean that the product contained no cheeses other than parmesan cheese, or that 100% of the cheese was grated. *Id.* at 923. In light of these multiple potential meanings, "[r]easonable consumers would . . . need more information before concluding that the labels promised only cheese and nothing more, and they would know exactly where to look to investigate — the ingredient list." *Id.*

That reasoning applies with equal force here. Even if Plaintiffs were correct that *some* consumers might interpret the name "Keebler Grahams" to refer to the presence of graham flour, a consumer could just as easily construe this phrase to refer to the flavor, shape, or texture of the product. Far from establishing that the name "Keebler Grahams" constitutes an affirmative misrepresentation, Plaintiffs' complaint merely indicates that this term has multiple plausible meanings — or, in other words, that it is ambiguous. And in light of that supposed ambiguity, a reasonable consumer would consult the ingredient list — which discloses that Keebler Grahams contain more enriched white flour than graham flour. *See* FAC ¶ 18. Viewed "as a whole," (*Freeman*, 68 F.3d at 290), the packaging is more than sufficient to cure any ambiguity resulting

from the use of the phrase "Keebler Grahams." *See In re 100% Grated Parmesan*, 275 F. Supp. 3d at 923; *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (dismissing false advertising lawsuit where "any potential ambiguity could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA").

To the extent Plaintiffs argue that this outcome is inconsistent with *Mantikas v. Kellogg Company*, 910 F.3d 633 (2d Cir. 2018), they are mistaken.  In *Mantikas*, the Second Circuit held that the plaintiffs had plausibly alleged that they interpreted the statement "Made with Whole Grain" to suggest that whole grains were the predominant ingredient in Cheez-It crackers.  *Id.* at 634.  The court held that the plaintiffs had sufficiently alleged at the pleading stage that "reasonable consumers are likely to understand that crackers are typically made predominantly of grain" and "look to the bold assertions on the packaging to discern what *type* of grain."  *Id.* at 638.  Accepting these allegations as true, the court concluded that the plaintiffs had alleged that "the representation that a cracker is 'made with whole grain' would thus plausibly lead a reasonable consumer to conclude that the grain ingredient was entirely, or at least predominately, whole grain."  *Id.* Because the plaintiffs had sufficiently alleged that the statement "Made with Whole Grain" suggested that Cheez-It crackers were made predominantly with whole grain, the court concluded that their complaint established that the "Nutrition Facts panel and ingredients list . . . contradict, rather than confirm, Defendant's 'whole grain' representations on the front of the box."  *Id.* at 637.

Nothing about *Mantikas* suggests that a reasonable consumer would interpret the phrase "Keebler Grahams" to suggest that the challenged products are predominantly made of graham flour.  Keebler Grahams do not purport to be "Made with Graham Flour."  In fact, other than the ingredient list, the labeling does not even *mention* graham flour.  It is therefore far from clear that

a reasonable consumer would interpret the name "Keebler Grahams" to refer to the presence of graham flour at all — let alone to suggest that graham flour is the predominant ingredient.

Moreover, the Second Circuit emphasized that its holding in *Mantikas* is not a one size fits all rule. It explicitly disclaimed any suggestion that a plaintiff can automatically survive dismissal by alleging that "food product labels asserting that the food was 'made with' various ingredients misled [her] to believe that the stated ingredient was the dominant, or at least a major, ingredient." *Id.* at 637. And it reaffirmed that courts must still "consider the challenged advertising as a whole, including disclaimers and qualifying language." *Id.* at 636. Here, the packaging "as a whole" does not suggest that graham flour is present in Keebler Grahams or that it is the predominant ingredient. At the absolute most, it suggests that the phrase "Keebler Grahams" may be ambiguous — which is not sufficient to state a consumer fraud claim, particularly when the packaging accurately discloses that Keebler Grahams contain more enriched flour than graham flour. *See* FAC ¶ 18.

### B.     The Labeling of the "Honey" Flavor Is Also Not Misleading.

Plaintiffs allege that the "Honey" flavor of Keebler Grahams is mislabeled for a separate reason: it purports to use honey as the "predominant sweetening agent," but actually contains more sugar than honey. FAC ¶¶ 52-54. This theory of deception fails for a similar reason: the packaging does not represent that honey is used as a sweetening agent, as opposed to a flavoring. To the extent that there is any ambiguity about whether honey is used as the primary sweetening agent (or whether it is present in the product at all), the labeling of the "Honey" variety dispels that ambiguity by "list[ing] all ingredients in order of predominance, as required by the FDA." *Workman*, 141 F. Supp. 3d at 1035.

For that reason, many courts have rejected lawsuits alleging that a product did not contain the ingredient that provided its characteristic flavor. *See, e.g.*, *Brumfield v. Trader Joe's Co.*, No.

17-3239, 2018 WL 4168956, at *2-3 (S.D.N.Y. Aug. 30, 2018) (dismissing lawsuit challenging truffle-flavored olive oil made without real truffles); *Stiles v. Trader Joe's Co.*, No. 16-4318, 2017 WL 3084267, at *4-5 (C.D. Cal. Apr. 4, 2017) (dismissing lawsuit challenging maple-flavored breakfast products made without maple syrup or maple sugar). Plaintiffs' claim is even more tenuous than those rejected in *Brumfield* and *Stiles*, as Plaintiffs concede that the Honey-flavored Keebler Grahams contain real honey. *See* FAC ¶ 18 (ingredient list). Plaintiffs have not come close to establishing that the unadorned term "Honey" is an affirmative misrepresentation (as opposed to a merely ambiguous statement) or that it suggests that honey is the predominant sweetener. This Court should reject this theory of deception.

## II.   Plaintiffs Have Not Plausibly Alleged Any FDA Regulatory Violations.

Unable to establish that the term "Grahams" is deceptive, Plaintiffs attempt to assert that Kellogg's labeling is nonetheless unlawful because it runs afoul of the FDA's food labeling regulations.[4] Although Plaintiffs reference a hodgepodge of FDA regulations in their First Amended Complaint — including 21 C.F.R. § 101.18, 21 C.F.R. § 101.54, and 21 C.F.R. § 101.65, as well as other regulations to which Plaintiffs allude without citing — they do not come close to establishing that Kellogg has violated any of them.

---

[4] To the extent Plaintiffs' claims are based on alleged FDA regulatory violations, they also fail because a state-law consumer fraud claim generally cannot be used to prosecute violations of regulatory statutes that lack a private right of action, such as the federal Food, Drug & Cosmetic Act. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199-200 (2d Cir. 2005) (holding that Section 349 could not be used to "circumvent the lack of a private right of action for violation of a *federal* law"); *PDK Labs, Inc. v. Friedlander*, 105 F.3d 1108, 1113 (2d Cir. 1997) (holding that there is no private right of action to enforce violations of the FDCA). To the extent Plaintiffs claim that the FDA's food labeling regulations have been incorporated via the New York Agriculture & Markets Law, that claim is similarly unavailing because Section 349 also does not permit a plaintiff to circumvent a *state* statute that does not supply a private right of action. *See Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001).

<u>First</u>, Plaintiffs allege that "[t]he Products' statement of identity — 'grahams' — represent[s] that a single ingredient constitutes 100% of the food."  FAC ¶ 45.  But as the FDA has made clear, the "statement of identity" can consist of either "[t]he common or usual name of the *food*" or, alternatively, "[a]n appropriately descriptive term, or when the nature of the *food* is obvious, a fanciful name commonly used by the public for such *food*."  21 C.F.R. § 101.3(b) (emphasis added).  In other words, the statement of identity refers to the *food*, not to its ingredients — such as graham flour.  Here, as the packaging makes clear, the name "grahams" is in immediate proximity to the word "crackers," making clear that the product is a cracker.[5]  *See* FAC ¶ 5; *see also Coe v. Gen. Mills, Inc.*, No. 15-5112, 2016 WL 4208287, at *3 (N.D. Cal. Aug. 10, 2016) ("[T]he term 'common or usual name' is meant to refer to a generic or descriptive term rather than a brand name.").  Moreover, even if "grahams" constituted a statement of identity, that does not mean that the labeling suggests the product is made exclusively from graham flour.  Instead, the term "grahams" serves as an "appropriately descriptive name" that, combined with the prominent images of graham crackers on the packaging, makes clear that the product is a graham cracker.  It does not represent, one way or the other, the *amount* of graham flour in the product.

<u>Second</u>, the term "grahams" is neither an express nor an implied nutrient content claim, as it does not "expressly or implicitly characterize[] the level of a nutrient" in the product.  21 C.F.R. § 101.13(b).  To the extent Plaintiffs suggest that the term "grahams" is a statement about the amount of graham flour in the product, it is still not a nutrient content claim because graham flour

---

[5] Plaintiffs also claim that the name of the product is misleading because it is "not uniform or identical among all identical or similar products ('graham crackers') where graham flour is the predominant flour."  FAC ¶ 22.  But just as different varieties of "crackers" can have different flavors, shapes, and ingredient compositions, so too can different varieties of "graham crackers."  Plaintiffs' allegation that graham crackers are defined as crackers "where graham flour is the predominant flour" is circular and begs the question of whether reasonable consumers actually expect the term "grahams" to constitute a representation about whole grain content.

is not a "nutrient."  *See* 21 C.F.R. § 101.9(c) (listing "nutrients" that must be disclosed in food labeling, such as calories, total fat, carbohydrates, and sodium).  The term "grahams" is also not an express nutrient content claim because it does not state *how much* graham flour is in the product, and it accordingly does not constitute a "direct statement about the level (or range) of a nutrient in the food," such as "'low sodium' or 'contains 100 calories.'"  21 C.F.R. § 101.13(b)(1) (defining express nutrient content claims).  That term is also not an implied nutrient content claim: it does not "suggest[] that a nutrient is absent or present *in a certain amount*," it does not "suggest that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices," and it is not "made in association with an explicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams (g) of fat).'"  *Id.* § 101.13(b)(2) (defining implied nutrient content claims).

<u>Third</u>, Plaintiffs suggest that the use of the term "grahams" misleadingly suggests that the Keebler Grahams are a "good source" of fiber or are "high" in fiber, even though they are not eligible to bear either claim because they contain less than 10% of the daily reference value of dietary fiber.  *See* FAC ¶¶ 38-39; *see also* 21 C.F.R. § 101.54 (FDA regulation governing "good source" and "high" claims).  But as the packaging makes clear, Keebler Grahams do not purport to be a "good source" of fiber or "high" in fiber; in fact, none of the labeling statements on the packaging even *mention* fiber.  *See* FAC ¶ 5.  And as several courts have made clear, 21 C.F.R. § 101.54 applies narrowly to labeling claims that *state* a product is "high" in or a "good source" of a given nutrient — not to claims that merely *imply* it.[6]

---

[6] *See, e.g.*, *McMorrow v. Mondelēz Int'l, Inc.*, No. 17-2327, 2018 WL 5024840, at *3 (S.D. Cal. Oct. 17, 2018) ("Simply because . . . Defendant's advertising statements imply the Products are high in fiber does not trigger Defendant to advertise or label the Products as 'high' in fiber nor to follow any rules related to this."); *Coe*, 2016 WL 4208287, at *4 ("[A]lthough Defendant characterizes the name 'Cheerios Protein' as a 'good source' claim . . . the regulation governing such claims applies only to the use of the words 'good source,' 'contains,' or provides,' 21 C.F.R. § 101.54(c) — none of which is present here.").

Plaintiffs then note that Kellogg once proposed requiring manufacturers to label certain whole grain products with the disclaimer "not a good source of fiber" and assert that Kellogg "was not prevented from including this disclaimer on the front label," even though "the FDA did not adopt this requirement."  FAC ¶¶ 43-44.  To the extent Plaintiffs claim that Kellogg's omission of this disclaimer renders the labeling of Keebler Grahams misleading, that claim is plainly preempted.  The Nutrition Labeling & Education Act of 1990 includes a broad express preemption provision directing that "*no State . . .  may directly or indirectly establish . . . any requirement for . . . labeling of food . . . that is not identical* to the requirement[s]" set forth in the statute.  21 U.S.C. § 343-1(a) (emphasis added).  By seeking to impose liability on Kellogg for failing to include a disclaimer that the FDA has specifically declined to require, Plaintiffs are attempting to do what the FDA has specifically forbidden — imposing labeling requirements under state law that go "beyond, or [are] different from," the federal labeling standards established by the FDA. *In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008); *see also* 21 C.F.R. § 100.1(c)(4) (noting that federal law prohibits states from "directly or indirectly impos[ing] obligations" that are "not imposed by or contained in" or that "[d]iffer from those specifically imposed by or contained in" the statute or the FDA regulations).

Fourth, Plaintiffs claim that the name "grahams" violates 21 C.F.R. § 101.18 because it "suggests the name of one but not all ingredients, even though the names of all such ingredients are stated elsewhere in the labeling."  FAC ¶ 21.  But courts faced with claims under 21 C.F.R. § 101.18 have made clear that such names are deceptive only when they "mislead consumers into believing the listed ingredients are the sole components of the [food]."  *Ackerman v. Coca-Cola Co.*, No. 09-395, 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010) (holding that the plaintiff stated a plausible claim by alleging that the term "vitaminwater" misled "reasonable consumer[s]

into believing that vitaminwater is composed solely of vitamins and water").  Here, the labeling of Keebler Grahams makes abundantly clear that the product contains ingredients other than graham flour: it describes the products as "crackers," and the package prominently displays an image of a graham cracker.  *See* FAC ¶ 5.  The labeling does not suggest that Keebler Grahams contain only one ingredient, and it accordingly does not violate 21 C.F.R. § 101.18.  *See, e.g.*, *Gubala v. Allmax Nutrition, Inc.*, No. 14-9299, 2015 WL 6460086, at *6 (N.D. Ill. Oct. 26, 2015) (holding that statements such as "Decadent Chocolate Milkshake" on a protein powder product "signal to consumers that the product they are purchasing is not made solely of the ultra-premium protein blend, but contains other ingredients as well").

III.   **Plaintiffs Fail to State a Plausible Breach-of-Warranty Claim.**

When a plaintiff alleges that supposedly false advertising constitutes a breach of a warranty, she cannot prevail on that breach-of-warranty claim unless she can establish that the defendant's advertising was likely to mislead a reasonable consumer.  *See, e.g.*, *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 185 (E.D.N.Y. 2018) ("[A] breach of express warranty claim is governed by the same reasonable consumer standard as Plaintiff's [NYGBL] claims.") (alteration in original); *Solak v. Hain Celestial Grp., Inc.*, No. 17-704, 2018 WL 1870474, at *11 (N.D.N.Y. Apr. 17, 2018) ("[B]ecause those three representations . . . are insufficient as a matter of law to mislead a reasonable consumer, they cannot be relied upon by Plaintiffs as grounds for asserting a breach of express warranty . . . .").  Here, absent any plausible allegation that the name "Keebler Grahams" or the "Honey" flavor would mislead a reasonable consumer, Plaintiffs cannot state a claim for breach of warranty against Kellogg.

16

Furthermore, even if the Court concluded that Plaintiffs' theory of deception is viable, their claims for breach of express warranty, violations of the Magnuson-Mass Warranty Act, and breach of implied warranty all suffer from independent, fatal defects that require their dismissal.

### A.    Plaintiffs' Express Warranty Claim Fails for Lack of Pre-Suit Notice.

"To successfully state a claim for breach of warranty" under New York law, "a buyer must provide the seller with timely notice of an alleged breach of warranty." *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (citations and internal quotation marks omitted); *see generally* N.Y. U.C.C. § 2-607(3)(a).  Failure to do so bars a plaintiff from bringing a claim for breach of express warranty.  *See Paulino v. Conopco, Inc.*, No. 14-5145, 2015 WL 4895234, at *1 (E.D.N.Y. Aug. 17, 2015) ("New York law requires that a buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.") (citation and internal quotation marks omitted).

Here, Plaintiffs do not allege that they provided Kellogg with notice of its purported breach of warranty prior to filing this lawsuit.  Under New York law, this requires the dismissal of their claim for breach of express warranty.  *See, e.g.*, *Colella*, 348 F. Supp. 3d at 143 (dismissing breach of express warranty claim for lack of pre-suit notice); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (same); *Singleton v. Fifth Generation, Inc.*, No. 15-474, 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016) (dismissing breach of express warranty claim because plaintiff "failed to allege that he provided timely notice to Defendant of the alleged breach").

### B.    Plaintiffs' Magnuson-Moss Warranty Act Claim Fails Because "Grahams" Does Not Satisfy the Statute's Definition of a "Written Warranty."

The Magnuson-Moss Warranty Act ("MMWA") "defines a 'warranty' as a 'written affirmation' that a consumer product will be 'defect free or will meet a specified level of performance over a specified period of time.'" *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d

371, 377-78 (S.D.N.Y. 2014) (citing 15 U.S.C. § 2301(6)).  Even assuming that the statement

"grahams" constituted a "written affirmation," it still does not constitute an actionable warranty

under the MMWA because it does not represent that Keebler Grahams are "defect free" or that

they will "meet a specified level of performance over a specified period of time."  At most, the

phrase "grahams" is a "product description," which is not actionable under the MMWA.[7]  *Bowling*,

65 F. Supp. 3d at 378 (quoting *In re Frito-Lay N. Am. Inc. All Natural Litig.*, No. 12-2413, 2013

WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013)).

Moreover, the MMWA specifically forecloses relief in cases where "the amount in

controversy of *any individual claim* is less than the sum or value of $25."  15 U.S.C. §

2310(d)(3)(A) (emphasis added).  Here, Plaintiffs allege that Keebler Grahams are sold at prices

as low as $2.99 per package.  FAC ¶ 56.  That allegation precludes Plaintiffs' claim under the

MMWA.  *See Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 965-66 (N.D. Cal. 2013) (dismissing

MMWA claim when the plaintiff "fails to allege the products at issue cost more than five dollars").

## C.  Plaintiffs' Implied Warranty Claim Fails Because Keebler Grahams Are Fit for Consumption.

Under New York law, the implied warranty of merchantability "requires only that the

goods sold be of a minimal level of quality," so that they are "fit for the ordinary purposes for

which such goods are used." *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 433 (2d Cir. 2013)

(applying New York law).  In cases involving food products, this requires the plaintiff to allege

---

[7] *See also, e.g., Hairston v. S. Beach Beverage Co.*, No. 12-1429, 2012 WL 1893818, at *5-6 (C.D. Cal. May 18, 2012) ("The challenged statements —'all natural with vitamins' and the names of various Lifewater flavors — are 'product descriptions' rather than promises that Lifewater is defect-free, or guarantees of specific performance levels."); *In re Sears, Roebuck & Co.*, No. 05-4742, 2006 WL 1443737, at *4 (N.D. Ill. May 17, 2006) (dismissing MMWA claim and holding that the phrase "Made in the USA" is a "product description that does not inform consumers that the tools are defect-free or make any representation about performance at a specified level over a specified time").

that the product was "unfit to be consumed." *Brumfield*, 2018 WL 4168956 at *4; *see also Ruggiero v. Perdue Poultry Co.*, No. 96-4929, 1997 WL 811530, at *1 (S.D.N.Y. Sept. 29, 1997) ("The product must have been actually unfit for human consumption or defective at the time it left the possession or control of the manufacturer."). Here, Plaintiffs do not allege that Keebler Grahams were contaminated or otherwise unfit for consumption; instead, they allege that they are mislabeled because they suggest that graham flour is the predominant ingredient, even though they contain more enriched flour than graham flour. That is woefully insufficient to establish a breach of the implied warranty of merchantability, and the Court should accordingly dismiss this claim.

## IV.    Plaintiffs Fail to Allege the Fraudulent Intent Necessary to Plead a Claim for Fraud.

To state a claim for fraud under New York law, "a plaintiff must allege 'a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury.'" *McBeth v. Porges*, 171 F. Supp. 3d 216, 225 (S.D.N.Y. 2016) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006)). A plaintiff must *also* "plead scienter, or fraudulent intent." *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 73 (E.D.N.Y. 2017).

Plaintiffs allege that Kellogg's "intent" in using the term "grahams" was to "secure economic advantage in the marketplace against competitors." FAC ¶¶ 110-11. But "[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendant's 'generalized motive to satisfy consumers' desires [or] increase sales and profits.'" *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018) (quoting *In re Frito-Lay*, 2013 WL 4647512, at *25); *see also, e.g., Quiroz v. Beaverton Foods, Inc.*, No. 17-7348, 2019 WL 1473088, at *10 (E.D.N.Y. Mar. 31, 2019) (holding allegation that the defendant had "a motive to misrepresent whether the Product contained preservatives in order to gain a marketing

advantage" did not establish scienter); *Rodriguez v. It's Just Lunch, Int'l*, No. 07-9227, 2010 WL 685009, at *6 (S.D.N.Y. Feb. 23, 2010) ("[A] desire to increase company profits cannot, standing alone, be a sufficient basis on which to predicate a fraud claim, lest every company be vulnerable to allegations of fraud.").  Here too, the absence of any factual allegations suggesting Kellogg acted with fraudulent intent requires that this Court dismiss Plaintiffs' claim for fraud.

## V.    New York's Economic Loss Rule Bars Plaintiffs' Negligent Misrepresentation Claim.

Under New York's economic loss doctrine, a plaintiff who has "suffered economic loss, but not personal or property injury," may not recover in tort if she has non-tort remedies available. *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (citation and internal quotation marks omitted); *see also Elkind v. Revlon Consumer Prods. Corp.*, No. 14-2484, 2015 WL 2344134, at *12 (E.D.N.Y. May 14, 2015) (dismissing negligent misrepresentation claim pursuant to the economic loss doctrine); *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009) (same).  Here, Plaintiffs cannot seek a tort remedy for negligent misrepresentation because they have other non-tort causes of action available to them.

While a plaintiff can sidestep the economic loss doctrine by alleging a "special relationship" with the defendant, such a special relationship does not arise in the context of an ordinary, arms-length sale of consumer products.  *See, e.g.*, *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-3826, 2015 WL 5579872, at *23-26 (E.D.N.Y. Sept. 22, 2015) (dismissing claim for negligent misrepresentation based on sale of allegedly mislabeled Greek Yogurt); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-5029, 2015 WL 2168374, at *14 (S.D.N.Y. 2015) (dismissing negligent misrepresentation claim based on allegedly mislabeled "natural" and "organic" products and noting that "Defendant's obligation to label products truthfully does not arise from any special relationship").  Plaintiffs allege no damages beyond pure economic loss and plead no facts

suggesting that their purchases of Keebler Grahams were anything other than a routine commercial transaction. Their claim for negligent misrepresentation is not cognizable under New York law.

## VI.      Plaintiffs Fail to State a Claim for Unjust Enrichment.

Under New York law, "[a]n unjust enrichment claim 'is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). Rather, such a claim is viable only in "unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.* As this Court has recognized, *Corsello* bars plaintiffs from "bring[ing] an unjust enrichment claim as a catch-all cause of action . . . ." *Mahoney v. Endo Health Solutions, Inc.*, No. 15-9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016). And other courts in New York regularly dismiss unjust enrichment claims as duplicative when they are based on the same factual allegations as other tort claims. *See, e.g.*, *Ebin v. Kangadis Food Inc.*, No. 13-2311, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013) (dismissing unjust enrichment claim where "plaintiffs have failed to explain how their unjust enrichment claim is not merely duplicative of their other causes of action"); *Hidalgo v. Johnson & Johnson Consumer Cos.*, 148 F. Supp. 3d 285, 298 (S.D.N.Y. 2015) (same).

Here, Plaintiffs' unjust enrichment claim simply alleges that Kellogg "obtained benefits and monies because the Products were not as represented and expected . . . ." FAC ¶ 114. That claim is entirely duplicative of their remaining claims, and it accordingly fails as a matter of law.

## VII.     Plaintiffs Lack Standing to Seek Injunctive Relief.

It is well-established that a plaintiff must "demonstrate standing for each claim and form of relief sought." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (citing *Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003)). "Although past injuries may provide a basis

for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citation omitted); *see generally City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983).

Federal courts in New York have repeatedly applied this principle to conclude that a consumer cannot seek injunctive relief once she has learned of a manufacturer's allegedly "deceptive" advertising, as there is no likelihood that she will be similarly deceived in the future. *See, e.g.*, *Davis*, 297 F. Supp. 3d at 339 ("To the extent that plaintiff was deceived by defendants' products, he is now aware of the truth and will not be harmed again in the same way."); *Elkind*, 2015 WL 2344134, at *3 (same); *Atik v. Welch Foods, Inc.*, No. 15-5405, 2016 WL 5678474, at *5 (E.D.N.Y. Sept. 30, 2016) (collecting cases holding that, "because the plaintiffs were aware of the deceptive advertising and were unlikely to be deceived in the future, the plaintiffs failed to allege a risk of future harm"). That rule applies with equal force here: now that Plaintiffs know that graham flour is not the predominant ingredient in Keebler Grahams, there is no risk that they will be "deceived" by Kellogg's advertising in the future.

The fact that Plaintiffs purport to represent a class of Keebler Grahams purchasers does not change this result. "[S]tanding cannot be acquired through the back door of a class action." *Hidalgo*, 148 F. Supp. 3d at 292 (citation and internal quotation marks omitted). Instead, as the Second Circuit has made clear, the named class representatives "must allege and show that they have personally been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). Thus, even if other class members

22

may not know that graham flour is not the predominant ingredient in Keebler Grahams, that is not enough to establish Article III standing: "There is no exception to demonstrating future injury when the plaintiff is pursuing a class action," and "the named plaintiff[] must have standing in order to seek injunctive relief on behalf of the class." *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016); *see also Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) ("[T]he fact that unknowing class members might purchase [the challenged] products based on the defendants' allegedly unlawful advertising does not establish standing.").

Plaintiffs' allegation that they would "consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading," (FAC ¶ 73), is similarly unavailing. This type of "conditional statement" does not establish Article III standing; to the contrary, it establishes that Plaintiffs *will not* purchase the product so long as it lacks "graham flour" as its first ingredient and makes clear that there is no risk of future harm. *See Izquierdo v. Mondelēz Int'l, Inc.*, No. 16-4697, 2016 WL 6459832, at *5 (S.D.N.Y. Oct. 26, 2016). Many New York courts have rejected similar efforts to establish standing, and this Court should do likewise.[8]

## VIII.   The Court Lacks Personal Jurisdiction Over Claims of Non-Resident Class Members.

Finally, even if Plaintiffs' allegations are sufficient to support personal jurisdiction over the claims of putative class members who allegedly purchased Keebler Grahams in New York, their complaint contains *no* facts that support personal jurisdiction over Kellogg as to claims arising out of the purchase of Keebler Grahams by non-New York consumers. The Supreme Court

---

[8] *See, e.g.*, *Holve v. McCormick & Co.*, 334 F. Supp. 3d 535, 552 (W.D.N.Y. 2018) (holding that the plaintiff lacked standing to seek injunctive relief notwithstanding her allegation that "she 'would purchase the Product again if it was not misbranded'"); *In re Edgewell Personal Care Co. Litig.*, No. 16-3371, 2018 WL 7858623, at *15 (E.D.N.Y. Sept. 4, 2018) (holding allegation that "plaintiffs . . . 'would purchase the product again in the future if they could be assured that the product was accurately labeled'" were "insufficient to establish standing for injunctive relief").

has long held that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984). The Supreme Court has recently applied that principle to hold that a court cannot exercise specific personal jurisdiction over the claims of nonresident class members whose injuries did not take place in the forum state. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017).

In *Bristol-Myers Squibb*, the plaintiffs — most of whom were not California residents — sued Bristol-Meyers Squibb, a non-California corporation, in California state court for alleged injuries arising out of their use of the drug Plavix. *Id.* at 1778. The Supreme Court held that the California state courts could not exercise specific personal jurisdiction over the claims of non-resident plaintiffs, as they "were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. *Id.* at 1781. In so holding, the Court emphasized that "[t]he mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California — and allegedly sustained the same injuries as did the nonresidents — does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* "What is missing," the Court concluded, "is a connection between the forum and the specific claims at issue." *Id.*

Like the plaintiffs in *Bristol-Myers Squibb,* Plaintiffs seek to assert claims on behalf of class members outside of New York against Kellogg — which is not a New York resident — based on purchases that took place in other states. Under similar circumstances, courts around the country have applied *Bristol-Myers Squibb* to conclude that they could not exercise personal jurisdiction over the claims of non-resident class members against a non-resident defendant. *See,*

24

*e.g.*, *Spratley v. FCA US LLC*, No. 17-62, 2017 WL 4023348, at *7 (N.D.N.Y. Sept. 12, 2017) (applying *Bristol-Myers Squibb* to hold that "the Court lacks specific jurisdiction over the out-of-state Plaintiffs' claims" when they "have shown no connection between their claims and Chrysler's contacts with New York"); *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 864 (N.D. Ill. 2018) (dismissing "the claims of the non-Illinois-resident class members" and holding that *Bristol-Myers Squibb* precluded the exercise of personal jurisdiction over those class members, as their "claims do not relate to defendants' contacts with Illinois"). Here, as in those cases, *Bristol-Myers Squibb* precludes this Court's exercise of personal jurisdiction over the claims of non-resident class members.

## CONCLUSION

For the foregoing reasons, this Court should grant Kellogg's motion to dismiss.[9]

Dated:  July 19, 2019

Respectfully submitted,

JENNER & BLOCK LLP

By:  /s/ Dean N. Panos
Dean N. Panos (*pro hac vice*)
Elizabeth A. Edmondson (N.Y. Reg. 4705539)
Alexander M. Smith (*pro hac vice*).

Attorneys for Defendant
Kellogg Sales Company

---

[9] The Court stated in its initial Scheduling Order, issued over a month before Kellogg moved to dismiss on June 10, that "it is unlikely that plaintiff will have a further opportunity to amend" if it chose to file an amended complaint in response to Kellogg's anticipated motion to dismiss. ECF No. 12, at 1. While the First Amended Complaint joins new Plaintiffs and includes a smattering of new allegations, it does virtually nothing to address Kellogg's arguments as to why the term "Grahams" is unlikely to mislead a reasonable consumers, and it likewise fails to cure any of the defects Kellogg identified in Plaintiffs' tag-along breach-of-warranty, common-law fraud, negligent misrepresentation, and unjust enrichment claims. The Court should accordingly dismiss this lawsuit with prejudice. *See Obodai v. YouTube LLC*, 840 F. Supp. 2d 714, 716 (S.D.N.Y. 2011) (Cote, J.) ("Plaintiff was put on notice of this defect in his pleadings through the defendants' first motion to dismiss . . . and has had an opportunity to amend the complaint. His claims are therefore denied with prejudice.").