United States District Court
Southern District of New York                    1:19-cv-01356-DLC

Wanda Watson, individually and on behalf
of all others similarly situated

                                    Plaintiff

               - against -

Kellogg Sales Company

                                    Defendants

Plaintiffs' Memorandum of Law in Opposition
to Defendant's Motion to Dismiss

SHEEHAN & ASSOCIATES, P.C.
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552 – Tel.

Attorneys for Plaintiffs

Table of Contents

Table of Authorities ................................................................................................................ ii

Introduction ........................................................................................................................... 2

argument ................................................................................................................................ 5

I.      Defendant does not offer proof in admissible form to support its contentions ................... 5

II.     Trademark principles are inapplicable to the present context ................................................. 5

III.    Ambiguity can be said to exist when representations appear "Too good to be
        True".............................................................................................................................................. 8

IV.     The Labeling of honey is misleading ....................................................................................... 10

V.      PLAINTIFFS SUFFICIENTLY ALLEGE COMMON LAW CLAIMS .......................... 10

        A.   Plaintiffs Unjust Enrichment Claims Are Adequately Pleaded ........................... 10

        B.   Plaintiffs' breach of warranty claims are sufficient ................................................ 12

        C.   Express Warranty Claims Not Barred By Defendant's Claim of Lack
             of Pre-Suit Notice ....................................................................................................... 13

        D.   MMWA Price Minimum Not Applicable ................................................................ 14

        E.   Defendant's Application of New York's "Economic Loss" Rule for
             negligent misrepresentation claims is in error ........................................................ 14

VI.     Plaintiff plausibly alleges defendant's fraudulent intent .................................................... 15

VII.    The court has specific personal jurisdiction over the claims of non-new york
        class members ......................................................................................................................... 16

        A.   Absent Class Members' Claims Are Not Relevant To Specific
             Personal Jurisdiction ................................................................................................... 17

        B.   *BMS* Does Not Support Dismissing the Claims of the Non-New
             York Class Members..................................................................................................... 19

VIII.   Plaintiff has Standing to seek Injunctive Relief .................................................................. 22

IX.     Conclusion............................................................................................................................... 24

**TABLE OF AUTHORITIES**

**Cases**

*Ackerman v. Coca–Cola Co.*,
   09–cv–395, 2013 WL 7044866
   (E.D.N.Y. July 18, 2013) ..................................................................................... 22, 23

*Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*,
   637 F.Supp.2d 185 (S.D.N.Y. 2009) ........................................................................ 11

*Aliano v. Quaker Oats Co.*,
   No. 16-cv-3087, 2017 WL 56638
   (N.D. Ill. Jan. 4, 2017) .............................................................................................. 17

*AM Tr. v. UBS AG*,
   78 F.Supp.3d 977 (N.D. Cal. 2015),
   aff'd, 681 F.App'x 587 (9th Cir. 2017) ...................................................................... 17

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ................................................................................................. 3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................... 4

*Avola v. Louisiana-Pacific Corp.*,
   991 F.Supp.2d 381 (E.D.N.Y. 2013) ......................................................................... 12

*Belfiore v. Procter & Gamble Co.*,
   311 F.R.D. 29 (E.D.N.Y. 2015) ................................................................................... 8

*Belfiore v. Procter & Gamble Co.*,
   F.Supp.3d 440 (E.D.N.Y. 2014) ................................................................................ 23

*Bell Atl. Co. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................... 4

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................... 3

*BMS*, 137 S. Ct. ............................................................................................................ 19

*Bristol-Myers Squibb Co. v. Superior Court of Cal.*,
   137 S. Ct. 1773 (2017) ............................................................................................... 16

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ................................................................................................... 18

*Campbell v. Freshbev LLC*,
  322 F.Supp.3d 330 (E.D.N.Y. 2018)................................................... 19

*CBS Inc. v. Ziff-Davis Publ'g Co.*,
  553 N.E.2d 997 (N.Y. 1990) .......................................................... 12

*Chernus v. Logitech, Inc.*,
  No. 17-cv-673, 2018 WL 1981481
  (D.N.J. Apr. 27, 2018)............................................................... 22

*Chrysler Capital Corp. v. Century Power Corp.*,
  778 F.Supp. 1260 (S.D.N.Y. 1991)................................................. 11

*Delgado v. Ocwen Loan Servicing Company, LLC*,
  No. 13-cv-4427, 2014 U.S. Dist. LEXIS 135758,
  2014 WL 4773991 (E.D.N.Y. Sept. 23, 2014) ...................................... 23

*Devlin v. Scardelletti*,
  536 U.S. 1 (2002) .................................................................... 18

*Famous Horse Inc. v. 5th Ave. Photo Inc.*,
  624 F.3d 106 (2d Cir. 2010) .......................................................... 3

*Famular v. Whirlpool Corp.*,
  No. 16-cv-944, 2017 WL 2470844 (S.D.N.Y. June 6, 2017)...................... 17

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013).......................................................... 8

*Fischer v. Mead Johnson Labs.*,
  41 A.D.2d 737, 341 N.Y.S.2d 257 (1st Dep't. 1973)............................... 13

*Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*,
  No. 17-cv-00564, 2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) ........... 17, 19, 20

*Foman v. Davis*,
  371 U.S. 178 (1962) .................................................................. 24

*Gant v. Wallingford Bd. of Educ.*,
  69 F.3d 669 (2d Cir. 1995)........................................................... 3

*Georgia Malone & Co v. Rieder*,
  973 N.E.2d 743, 19 N.Y.3d 511,
  950 N.Y.S.2d 333 (2012) ............................................................ 12

*Goldman v. Metro. Life Ins. Co.*,
  5 N.Y.3d 561 (N.Y. 2005)............................................................ 12

*Gonzalez v. Costco Wholesale Corp.*,
　No. 16-cv-2590, 2018 U.S. Dist. LEXIS 171000,
　2018 WL 4783962 (E.D.N.Y. Sep. 29, 2018) ..................................................... 19, 20

*Goshen v. Mutual Life Ins. Co. of N.Y.*,
　774 N.E.2d 1190, 98 N.Y.2d 314 (2002) ................................................................. 4

*Hanley v. Chicago Title Ins. Co.*,
　No. 12-cv-4418, 2013 WL 3192174 (S.D.N.Y. June 24, 2013) ................................ 3

*In re 100% Grated Parmesan Mktg. & Sales Practices Litig.*,
　275 F.Supp.3d 910 (N.D. Ill. 2017) ........................................................................ 8

*In re SKAT Tax Refund Scheme Litig.*,
　356 F.Supp.3d 300 (S.D.N.Y. 2019) ...................................................................... 10

*In re: Chinese-Manufactured Drywall Prods. Liab. Litig.*,
　No. 09-md-02047, 2017 WL 5971622 (E.D. La. Nov. 30, 2017) ............................... 16, 18, 19

*Jackson v. Bank of Am., N.A.*,
　No. 16-cv-787, 2018 WL 2381888 (W.D.N.Y. May 25, 2018) ................................ 17

*Jensen v. Cablevision Sys. Corp.*,
　No. 17-cv-00100, 2017 WL 4325829 (E.D.N.Y. Sept. 27, 2017).............................. 20

*JTH Tax, Inc. v. Gouneh*,
　721 F.Supp.2d 132 (N.D.N.Y. 2010) ...................................................................... 11

*Kelly v. Cape Cod Potato Chip Co.*,
　81 F.Supp.3d 754 (W.D. Mo. 2015)......................................................................... 7

*Kennedy v. F.W. Woolworth Co.*,
　205 A.D. 648, 200 N.Y.S. 121 (1st Dep't. 1923)................................................... 14

*Knotts v. Nissan North America, Inc.*,
　346 F.Supp.3d 1310 (D. Minn. 2018) ..................................................................... 22

*Koehler v. Litehouse, Inc.*,
　2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635
　(N.D. Cal. Dec. 13, 2012)....................................................................................... 23

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
　797 F.3d 160 (2d Cir. 2015) ................................................................................... 24

*McKinnis v. Kellogg USA*,
　No. 07-cv-2611, 2007 WL 4766060
　(C.D. Cal. Sept. 19, 2007) ........................................................................................ 6

*Neri v. R.J. Reynolds Tobacco Co.*,
  No. 98-cv-371, 2000 WL 33911224 (N.D.N.Y. Sept.28, 2000) ............................................ 13

*Niedernhofer v. Wittels*,
  No. 17-cv-4451 (S.D.N.Y. July 31, 2018) .............................................................................. 12

*O'Brien v. Nat'l Prop. Analysts Partners*,
  936 F.2d 674 (2d Cir. 1991) .................................................................................................. 16

*Ossining Sch. v. Anderson*,
  73 N.Y.2d 417, 539 N.E.2d 91, 541 N.Y.S.2d 335 (1989) .................................................... 15

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
  85 N.Y.2d 20 (1995) ................................................................................................................. 4

*Paulino v. Conopco, Inc.*,
  No. 14-cv-5145, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ........................................... 13

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ............................................................................................................... 18

*Phillips v. Reed Grp., Ltd.*,
  955 F.Supp.2d 201 (S.D.N.Y. 2013) ..................................................................................... 11

*Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*,
  301 F.Supp.3d 840 (N.D. Ill. 2018) ...................................................................................... 21

*Promuto v. Waste Mgmt., Inc.*,
  44 F.Supp.2d 628 (S.D.N.Y. 1999) ....................................................................................... 12

*Quinn v. Walgreen Co.*,
  958 F.Supp.2d 533 (S.D.N.Y. 2013) ..................................................................................... 13

*Quiroz v. Beaverton Foods, Inc.*,
  No. 17-cv-7348, 2019 WL 1473088 (E.D.N.Y. Mar. 31, 2019) ........................................... 15

*Raines v. Byrd*,
  521 U.S. 811 (1997) ............................................................................................................... 23

*Rodriguez v. It's Just Lunch, Int'l*,
  No. 07-cv-9227, 2010 WL 685009 (S.D.N.Y. Feb. 23, 2010) ............................................... 11

*Salters v. Beam Suntory, Inc.*,
  No. 14-cv-659, 2015 WL 2124939
  (N.D. Fla. May 1, 2015) ........................................................................................................... 7

*Segedie v. Hain Celestial Grp., Inc.*,
  No. 14-cv-5029, 2015 WL 2168374 (S.D.N.Y. 2015) ........................................................... 15

*Silverstein v. R.H. Macy & Co.*,
    266 A.D. 5, 40 N.Y.S.2d 916 (1st Dep't. 1943) ...................................................................... 13

*Singleton v. Fifth Generation, Inc.*,
    No. 15-cv-474, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) .................................................... 13

*Spratley v. FCA US LLC*,
    No. 17-cv-0062, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) ............................................. 21

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
    No. 14-cv-3826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) .............................................. 15

*Surgicenters of America v. Medical Dental Surgeries*,
    601 F.2d 1011 (9th Cir. 1979) ...................................................................................................... 6

*Ultramares Corp. v. Touche*,
    255 N.Y. 170, 174 N.E. 441, 1931 N.Y. LEXIS 660 (N.Y. 1931) ......................................... 15

*Weisblum v. Prophase Labs, Inc.*,
    88 F.Supp.3d 283 (S.D.N.Y. 2015) ........................................................................................... 14

*Weisman v. LeLandais*,
    532 F.2d 308 (2d Cir. 1976) .......................................................................................................... 3

*Werbel v. Pepsico, Inc.*,
    No. 09-cv-4456, 2010 WL 2673860
    (N.D. Cal. July 2, 2010) ................................................................................................................ 6

*Williams v. Calderoni*,
    2012 U.S. Dist. LEXIS 28723 (S.D.N.Y. Mar. 1, 2012),
    *aff'd*, *Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013) ................................................... 4

*Woods v. Maytag Co.*,
    807 F.Supp.2d 112 (E.D.N.Y. 2011) ............................................................................................ 3

*Workman v. Plum Inc.*,
    141 F.Supp.3d 1032 (N.D. Cal. 2015) ......................................................................................... 9

**INTRODUCTION**

Plaintiff submits this memorandum of law in opposition to defendant's Motion to Dismiss the First Amended Complaint ("FAC" or ECF No. 16), and Memorandum of Law in Support ("Def. MOL").  For the reasons below, the motion should be denied it in its entirety.

Plaintiffs hereby respectfully submit this Opposition to Defendant's Motion to Dismiss the First Amended Complaint ("Def. Mem."). On February 12, 2019, Plaintiff brought a Class Action Complaint seeking redress for the unfair, deceptive and otherwise improper business practices whereby Defendant markets and labels its graham cracker products (the "Products"). On June 10, 2019, Defendant filed its First Motion to Dismiss ("MTD 1").  On June 16, 2019, Plaintiff filed a First Amended Complaint ("FAC").  On July 19, 2019, Defendant filed its Second Motion to Dismiss the FAC, which Plaintiff here opposes.  ECF No. 26.

In reliance on Defendant's label misrepresentations that the Products' grain source is primarily whole instead of refined, images of darkened crackers, and flowing stalks of wheat, plaintiffs purchased the Products for personal consumption in their respective states at premium prices of "no less than $2.99 per 15 oz (425g)."

However, the Products actually contain white, or refined flour, well-known as lacking the nutrients and vitamins of its whole grain, graham flour counterpart.  Plaintiffs and Class members were therefore injured when they were deceived into purchasing a product whose value as delivered was substantially less than its value as warranted.

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is

very remote and unlikely but that is not the test.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976)). A court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.*, No. 12-cv-4418, 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013) (citing *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and… determine whether they plausibly give rise to an entitlement of relief." *Woods v. Maytag Co.*, 807 F.Supp.2d 112, 118–19 (E.D.N.Y. 2011) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)). Plaintiffs need only assert factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's claim to relief must be "plausible on its face," Id. at 570, and a complaint fails if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557. However, "[t]he plausibility standard [on a motion to dismiss] is not akin to a probability requirement." Iqbal, 129 S. Ct. at 1937. Plaintiffs need only "nudge" their allegations "across the line from conceivable to plausible." Twombly, 550 U.S. at 548.

This case arises out of Defendant's violations of New York State General Business Law ("GBL"), GBL §§ 349-350.  Plaintiff alleges that Defendant deceptively marketed its One Bar protein bars by making material misrepresentations and omissions on One Brands' website and on the front of each One Bar label. FAC ¶ 23.

The representations violate New York General Business Law ("GBL") §§ 349 and 350, prohibiting "[d]eceptive acts or practices" and "[f]alse advertising" because they contain unauthorized implied nutrient content claims ("low sugar") under the guise of "factual statements" and a brand name.  FAC, ¶¶ 51-69.

The purpose of these laws is "to secure an 'honest market place' where 'trust,' and not deception, prevails." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195, 98 N.Y.2d 314, 324 (2002) (citation omitted).

To state a claim pursuant to GBL §§ 349 and 350, a plaintiff must allege that: (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff was injured as a result. *See, e.g.*, *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995). Whether a particular act or practice is deceptive is intensely-factual, and, therefore, motions to dismiss are disfavored. *See, e.g.*, *Sims v. First Consumers Nat. Bank*, 303 A.D. 2d 288, 289, 758 N.Y.S. 2d 284, 285-286 (1st Dept. 2003).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Twombly*, 550 U.S. at 556.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556-57; *Williams v. Calderoni*, 2012 U.S. Dist. LEXIS 28723, at *20 (S.D.N.Y. Mar. 1, 2012) (in evaluating a complaint under a Rule 12(b)(6) standard, the Court need not accept "implausible allegations or legal conclusions expressed as facts"), *aff'd*, *Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013).

4

**ARGUMENT**

## I. DEFENDANT DOES NOT OFFER PROOF IN ADMISSIBLE FORM TO SUPPORT ITS CONTENTIONS

Defendant's argument apepars to accept there are factual issues not suitable for disposition on a rule 12(b)(6) motion.  Defendant has not offered proof such as consumer surveys or studies *showing* the public uses the term, "graham crackers" in the ways defendant suggests. This is in contrast to the FAC's "well-pleaded factual allegations" that the public expects graham crackers to be mostly whole wheat flour.[1]  FAC  ("Average Americans fondly recall graham crackers as a hearty snack") ("It would not be unreasonable for consumers to expect the Products to only contain graham flour").  Defendant has invoked the "term's history and etymology," but not elaborated on what this means.  Lastly, defendant cites a number of trademark cases, but provides no certificates of registration indicating it owns the trademark to Grahams or Graham Crackers.

## II. TRADEMARK PRINCIPLES ARE INAPPLICABLE TO THE PRESENT CONTEXT

The FAC alleges the Products are misleading because "the term 'graham' modifies 'crackers' such that graham flour will presumably be the predominant or exclusive flour type." FAC 9.

According to defendant, "graham cracker" is no more descriptive of a products' composition than terms such as "butternut," a vegetable which is not a nut nor contains churned milk of a cow.  Def. Mem. At 14 citing *Nashville Syrup Co. v. Coca Cola Co.*, 215 F. 527, 532

---

[1] The FAC alleged that "grahams" is an inaccurate common or usual name for the Products because the word "graham" implies that this type of flour is present in an amount greater than other flour varieties (enriched or white flour).  While in places the FAC states that "graham flour" is represented as "100% of the Product," this should read as "100% of the flour used in the Product."  It is not possible to convert flour into a food without other ingredients and other paragraphs of the FAC reflect this.

5

(6th Cir. 1914) ("The name in which trade-mark rights have been acquired is the compound name 'Coca Cola,' and this name may not, for all purposes, be the same as if it was 'Extract of Coca and of Cola.' Neither of these words alone had any absolute complete meaning, but when the words were put together to make the compound term, the ambiguity of meaning was intensified"); *See Surgicenters of America v. Medical Dental Surgeries*, 601 F.2d 1011 at 1014 (9th Cir. 1979) ("The cases identify four categories of terms with respect to trademark protection: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. As the district court correctly noted, the lines of demarcation are not always clear, and the "entire area of trade or service marks . . is fraught with difficulties and ambiguities").

The "Coca Cola" in *Nashville Syrup Co.* was an example of a descriptive mark, and that court expressly refused to render a decision on that issue. 215 F. 527 at 532 ("We think it clear that whether the claimed trademark is so descriptive of something else as to be deceptive must be decided as of the time of adoption.").  Rather, the court accepted the Coca Cola Co.'s lawful trademark registration as sufficient evidence that the term, "Coca Cola," was not deceptive, because if it were, "the courts would not enforce any exclusive rights" in the first place.

The court there was not faced with the question of whether "Coca Cola" "applied to a compound not composed mainly of these ingredients." *Id.*

Defendant's comparison of a product containing the name of an actual, established food – "graham" – with "FROOT" and "Crunch Berries" fails because the latter are obvious fanciful names, which by definition are "overimaginative and unrealistic" – such as "moon pie" or "Hershey's Kisses."  *See, e.g.*, *Werbel v. Pepsico, Inc.*, No. 09-cv-4456, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (trademark term "Crunch Berries" did not refer to actual berries); *McKinnis v. Kellogg USA*, No. 07-cv-2611, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007)

(trademark term "FROOT LOOPS" did not describe or represent the cereal ingredients contained fruit).

Additionally, in *McKinnis* and *Werbel*, the challenged terms appeared *separately* from the "appropriately descriptive term[s]" affixed to the front label of all foods.  21 C.F.R. §101.3(b)(3) ("Identity labeling of food in packaged form."); 2007 WL 4766060, at *4 (Recognizing that the actual name of the food was "SWEETENED MULTIGRAIN CEREAL"); 2010 WL 2673860, at *3 (Contrary to that plaintiff's beliefs that the product contained berries of the "crunch" variety, the product actually consisted of a "SWEETENED CORN & OAT CEREAL.").

Defendant claims it is "hyper-literal" for consumers to place "reliance on the dictionary definition of 'graham cracker' to suggest the presence of graham flour." Def. Mem. At 6 citing *Salters v. Beam Suntory, Inc.*, No. 14-cv-659, 2015 WL 2124939, at *2 (N.D. Fla. May 1, 2015) (dictionary definition of "handmade" was implausible as applied to mass-produced whiskey); *Kelly v. Cape Cod Potato Chip Co.*, 81 F.Supp.3d 754, 760 (W.D. Mo. 2015) ("'natural' . . . is not plausible because the Chips are processed foods, which of course do not exist or occur in nature.").

However, the FAC does not seek the impossible, such as handmade, mass-produced whiskey or a potato chip which grows in its sliced form.  There is nothing "unrealistic" about the term "Grahams," such as an intentional misspelling, i.e., "Grams," which  otherwise could tip a consumer off that the Products may not be what they appear to be.  Nor does the FAC seek a rare, seldom seen, gourmet product (i.e., truffles).  The FAC merely seeks a cracker made from at least 51% graham flour.  This is not an unrealistic expectation, as such products exist and are sold adjacent to defendant's Products, and defendant actually sells non-deceptively labeled graham crackers, just not to consumers.  ECF 19 at p. 5.

"Graham" (singular) refers to a specific standardized ingredient which has had a common consumer understanding for over 50 years.  ECF No. 19 at ¶ 6 ("Graham flour is a coarse-ground "unbolted" flour, made from the whole grain"); *fn* 12 citing 21 C.F.R. § 137.200(a) ("Whole wheat flour, graham flour, entire wheat flour is the food prepared by so grinding cleaned wheat").  There is no similar standardized food known as "Froot" nor any record of "Crunch Berry" farming.

Defendant's conclusory statement that no reasonable consumer would believe or expect "that a 'graham cracker' necessarily contains graham flour, let alone that it is the predominant ingredient," is itself implausible.  ECF No. 26 at 7.  In contrast to the well-pleaded allegations of the FAC, accepted as true for the purposes of a motion under Rule 12(b)(6), the best defendant offers is a confirmation that there are issues of fact not suitable for disposition on such a motion.  ECF No. 26 at 7 ("graham crackers are commonly consumed in desserts," "consumers view graham crackers as being a somewhat healthier option than other types of cookies").

### III.   AMBIGUITY CAN BE SAID TO EXIST WHEN REPRESENTATIONS APPEAR "TOO GOOD TO BE TRUE"

Defendant is correct in noting that "context is crucial" in establishing whether any ambiguity rises to the level of being misleading.  *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) ("Courts view each allegedly misleading statement in light of its context The entire mosaic is viewed rather than each tile separately.").

Defendant's reliance on *In re 100% Grated Parmesan Mktg. & Sales Practices Litig.* for the proposition that any deception can be cured by the ingredient list is mistaken. 275 F.Supp.3d 910, 922 (N.D. Ill. 2017) ("consumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight").  The "unnatural or debatable manner" of the plaintiffs' interpretation there was not recognizing that

8

"Cheese is a dairy product, after all, and reasonable consumers are well aware that pure dairy products spoil, grow blue, green, or black fuzz, or otherwise become inedible if left unrefrigerated for an extended period of time." 275 F.Supp.3d 910 at 923.  Given that the parmesan cheese at issue was not refrigerated, "and shelf-stable at room temperature," there was sufficient ambiguity to put the onus on consumers to turn the product around.  *Id.*

In *Workman v. Plum Inc.*, the court dismissed the claims which expected the vignettes to be proportional to the amount of each ingredient. 141 F.Supp.3d 1032, 1036 (N.D. Cal. 2015) ("No reasonable consumer would expect the size of the flavors pictured on the label to directly correlate with the predominance of the pictured ingredient in the puree blend.").

Defendant's authorities collectively hold that where there is ambiguity, the consumer should be obliged to inquire.  The ambiguity in *In re 100% Grated Parmesan* and in *Workman* was evident: unrefrigerated cheese and "large pictures depicting vegetable or fruit flavors, when the products themselves are largely made up of a different base ingredient."  In other words, ambiguity can be said to exist when a products' representations are "too good to be true," or are implausible.  Given that real cheese must be refrigerated and that it is unreasonable to expect the flavoring components of a product to be present in significant amounts, the plaintiffs there had an obligation to not take the front label claims at face value.  Expecting a cracker to have more whole grain flour than enriched flour is not asking for something which is rare or unique, especially when the Products' name refers to a whole grain flour.

Defendant correctly notes that "Honey Maid graham crackers do not purport to be "Made with Graham Flour."  *Mantikas v. Kellogg Company*, 910 F.3d 633 (2d Cir. 2018) ("we cannot conclude that these disclosures [ingredient list] on the side of the box render Plaintiffs' allegations of deception implausible").  However, this means that there is *less* of a question whether products

9

named for a whole wheat flour are misleading where that ingredient is not predominant compared to enriched flour.

### IV.    THE LABELING OF HONEY IS MISLEADING

With respect to the Products' emphasis on honey, defendant's argument actually supports the claims of the FAC.  In opposition to plaintiffs' claims that honey is the predominant sweetening agent, defendant concedes honey is actually a flavoring.  Yet the term "flavored" appears nowhere on the Honey varieties.

### V.    PLAINTIFFS SUFFICIENTLY ALLEGE COMMON LAW CLAIMS

As discussed below, Plaintiffs have properly alleged all the elements – with the requisite particularity – for (1) unjust enrichment, (2) intentional misrepresentation, (3) negligent misrepresentation, and (4) fraudulent intent. Moreover, for each claim, Plaintiffs have specified the deceptive statements, the "speaker" of those statements, where they were made, and why they are deceptive.[2]

#### A.    Plaintiffs Unjust Enrichment Claims Are Adequately Pleaded

Defendant's states "'[a]n unjust enrichment claim 'is not available where it simply duplicates, or replaces, a conventional contract or tort claim.'" Mem. At 29 quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).  Though correct that "[A] plaintiff may not plead the same claim more than once, which would constitute a duplicative claim," the Federal Rules permit pleading claims which  "provide alternative bases for relief." Fed. R. Civ. P. 8(d); *In re SKAT Tax Refund Scheme Litig.*, 356 F.Supp.3d 300, 325 (S.D.N.Y. 2019).

---

[2] Defendant applied New York law to analyze Plaintiffs' common-law claims (Mem. 15), so Plaintiffs respond by also applying New York law. Should Defendant later apply the law of a different state to address these claims, Plaintiffs reserve their right to address those arguments

The FAC's unjust enrichment is not duplicative of the contract or tort claims because plaintiffs' consumer protection law claims may not succeed, yet the unjust enrichment claim would provide relief.  *In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 325-26 (S.D.N.Y. 2019).

Defendant correctly notes that a unjust enrichment claim is not available where a contract defines the rights of the parties.  Mem. At 29.

Instead, defendant argues that the claim for unjust enrichment must be dismissed because it disputes the warranty it provided to the Products. FAC ¶¶ 100-104.  The rule in New York, however, is that if "the parties dispute the existence of a contract," then the plaintiff is entitled to pursue unjust enrichment claims in the alternative to the contract-based claim.  *Phillips v. Reed Grp., Ltd.*, 955 F.Supp.2d 201, 216 (S.D.N.Y. 2013); *see also, e.g., JTH Tax, Inc. v. Gouneh*, 721 F.Supp.2d 132, 139 (N.D.N.Y. 2010); *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F.Supp.2d 185, 195-96 (S.D.N.Y. 2009).

Defendant disputes the existence of a contract through its denial that it warranted the Products, "it [grahams] still does not constitute an actionable warranty" and its effort to void the contract "for lack of pre-suit notice to Kellogg." Mem. At 2, 26.

Until the warranty issue is resolved, Plaintiff Parks is entitled to proceed on his claim for unjust enrichment as well.  See, e.g., *Chrysler Capital Corp. v. Century Power Corp.*, 778 F.Supp. 1260, 1272 (S.D.N.Y. 1991) ("At this stage of the proceedings, Plaintiffs' unjust enrichment claim cannot be dismissed on what is basically a factual issue."); *Rodriguez v. It's Just Lunch, Int'l*, No. 07-cv-9227, 2010 WL 685009 at *11 (S.D.N.Y. Feb. 23, 2010) ("Since the plaintiffs have not, as of yet, demonstrated the existence of an enforceable contract[], their unjust enrichment claim is not precluded, as a matter of law.")

11

However, "'[t]he theory of unjust enrichment lies as a quasi-contract claim' and contemplates 'an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties.'" *Georgia Malone & Co v. Rieder*, 973 N.E.2d 743, 19 N.Y.3d 511, 516, 950 N.Y.S.2d 333 (2012) (citations and quotations omitted).

Unjust enrichment is a quasi-contract claim that the law creates in the absence of any agreement between the parties. Id. at 586-87. Accordingly, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in [unjust enrichment] for events arising out of the same subject matter." *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (N.Y. 2005); accord Beth Israel, 448 F.3d at 587. Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006) quoting Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000).

Here, there is a dispute between the parties of whether an enforceable contract existed between them. (See Def. Mot. ¶ 1.) Therefore, until that issue is resolved, the claim for unjust enrichment is not duplicative. *Niedernhofer v. Wittels*, No. 17-cv-4451 (S.D.N.Y. July 31, 2018)

### B.   Plaintiffs' breach of warranty claims are sufficient

For express warranty claims, New York law requires "(i) a material statement amounting to a warranty; (ii) the buyer's reliance on this warranty as a basis for the contract with his immediate seller; (iii) the breach of this warranty; and (iv) injury to the buyer caused by the breach. *Avola v. Louisiana-Pacific Corp.*, 991 F.Supp.2d 381, 391 (E.D.N.Y. 2013) (citing N.Y. U.C.C. § 2-313 (1)(a)); *Promuto v. Waste Mgmt., Inc.*, 44 F.Supp.2d 628, 642 (S.D.N.Y. 1999); *CBS Inc. v. Ziff-Davis Publ'g Co.*, 553 N.E.2d 997, 1003 (N.Y. 1990).

    C.    <u>Express Warranty Claims Not Barred By Defendant's Claim of Lack of Pre-Suit Notice</u>

Defendant argues that Plaintiff's claim for breach of express warranty fails because Plaintiff did not provide notice of the breach. Defendant's Motion at p. 26 citing New York Uniform Commercial Code ("N.Y. U.C.C.") § 2-607(3)(a); *Colella v. Atkins Nutritionals, Inc.*, 348 F.Supp.3d 120, 143 (E.D.N.Y. 2018) (dismissing breach of express warranty claim for lack of pre-suit notice); *Paulino v. Conopco, Inc.*, No. 14-cv-5145, 2015 WL 4895234, at *1 (E.D.N.Y. Aug. 17, 2015) ("New York law requires that a buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.") ; *Quinn v. Walgreen Co.*, 958 F.Supp.2d 533, 544 (S.D.N.Y. 2013) (same); *Singleton v. Fifth Generation, Inc.*, No. 15-cv-474, 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016) (dismissing breach of express warranty claim because plaintiff "failed to allege that he provided timely notice to Defendant of the alleged breach").

Defendant's argument fails to consider the line of New York Cases that create an exception to the notice requirement for retail customers. *Neri v. R.J. Reynolds Tobacco Co.*, No. 98-cv-371, 2000 WL 33911224, at *19 (N.D.N.Y. Sept.28, 2000); See also *Fischer v. Mead Johnson Labs.*, 41 A.D.2d 737, 737, 341 N.Y.S.2d 257 (1st Dep't. 1973) (overturning the Special Term and holding "the prescription of timely notice under the code provisions is to be applied, if at all, differently in commercial and retail sales situations."); *Silverstein v. R.H. Macy & Co.*, 266 A.D. 5, 9, 40 N.Y.S.2d 916 (1st Dep't. 1943) (finding that for the complaint to be sufficient, Plaintiff did not need a notice under section 130 of the Personal Property Law because the notice had no relation to goods for immediate human consumption. The Court further held that to require a complaint which indicates a notice of rejection or claim of damage within a reasonable time on account of defect of edible goods in a retail transaction, "would strain the rule beyond a breaking

13

point of sense or proportion to its intended object."); *Kennedy v. F.W. Woolworth Co.*, 205 A.D. 648, 649, 200 N.Y.S. 121 (1st Dep't. 1923) (holding the similar provision of section 130 of Personal Property law, which was the predicate for section 2-607 of the UCC, was not applicable in situations involving goods sold for human consumption).

Even if the exception is inapplicable, Defendant had notice that a defect had manifested and had opportunity to cure by the time the FAC was filed, approximately four months *after* the initial complaint.   Therefore, Plaintiff's breach of express warranty claim is properly pled and Defendant's Motion to Dismiss this claim should be denied.

###### D.   MMWA Price Minimum Not Applicable

Defendant invokes the "amount in controversy" requirement of the MMWA, because, "the amount in controversy of any individual claim is less than the sum or value of $25." 15 U.S.C. § 2310(d)(3)(A) (emphasis added). Def. Mem 26.  However, the claim value is relevant *only* as it pertains to invoking the MMWA "as a basis for the Court's jurisdiction," which is not the case since the FAC relied on "the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), which grants district courts "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000 . . . and is a class action in which" certain criteria are met.

###### E.   Defendant's Application of New York's "Economic Loss" Rule for negligent misrepresentation claims is in error

Defendant attempts to discard plaintiffs' negligent misrepresentation claims on the theory that "a plaintiff who has 'suffered economic loss, but not personal or property injury,' may not recover in tort if she has non-tort remedies available."  Def. Mem. At 28 quoting *Weisblum v. Prophase Labs, Inc.*, 88 F.Supp.3d 283, 297 (S.D.N.Y. 2015) and citing *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-cv-2484, 2015 WL 2344134, at *12 (E.D.N.Y. May 14, 2015).

Further, the alleged absence of "a special relationship does not arise in the context of an ordinary, arms-length sale of consumer products" and weighs in favor of dismissing this claim. Def. Mem. At 28 citing *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-cv-3826, 2015 WL 5579872, at *23-26 (E.D.N.Y. Sept. 22, 2015) and *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029, 2015 WL 2168374, at *14 (S.D.N.Y. 2015).

"Economic loss" has historically been excluded from recoverable damages because "what is objectively foreseeable injury may be vast and unbounded, wholly disproportionate to a defendant's undertaking or wrongdoing." *Ossining Sch. v. Anderson*, 73 N.Y.2d 417 at 421, 539 N.E.2d 91, 541 N.Y.S.2d 335 (1989). To limit the potential of cascading liability, a "special relationship" was required between the parties which was "so close as to approach that of privity, if not completely one with it." *Ultramares Corp. v. Touche*, 255 N.Y. 170 at 182-183, 174 N.E. 441, 1931 N.Y. LEXIS 660 (N.Y. 1931)

However, privity has been a flexible concept, created to ensure that only parties who could foreseeably be harmed have a right to redress and allocate risk. To address the fundamental unfairness that application of strict privity requirements would impose on those affected by products, courts and scholars have applied the third-party beneficiary doctrine. U.C.C. § 2-318 (amended 2010) U.C.C. § 2-318 cmt. 3.

## VI.   PLAINTIFF PLAUSIBLY ALLEGES DEFENDANT'S FRAUDULENT INTENT

Defendant argues that Plaintiff fails to plausibly allege common law fraud because she fails to allege "specific facts 'that give rise to a strong inference of fraudulent intent.'" Def. Mem., pg. 19 (citing *Quiroz v. Beaverton Foods, Inc.*, No. 17-cv-7348, 2019 WL 1473088, at *10 (E.D.N.Y. Mar. 31, 2019).

However, Plaintiff's allegations do give rise to a strong inference that Defendant acted with either actual knowledge of its representations' falsity or with reckless disregard for their truth. Given that defendant markets graham cracker products that are consistent with their name, it is reasonable to expect people to think both products share the same composition.  The failure to do so qualifies as reckless disregard for the truth, which satisfies the scienter requirement for fraud claims. See *Hughes v. Ester C Co.*, 930 F.Supp.2d 439, 473 (E.D.N.Y. 2013) ("Plaintiffs bolster this claim of alleged falsity awareness by pointing to an alleged lack of supporting scientific evidence for defendants' claims"); *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) ("Rule 9(b) permits scienter to be demonstrated by inference").

## VII.   THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER THE CLAIMS OF NON-NEW YORK CLASS MEMBERS

Relying primarily on *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773 (2017) ("BMS"), Defendant argues that "[t]he Complaint fails to allege facts to establish general jurisdiction over CNL, or specific personal jurisdiction as to the claims of putative nationwide class members residing outside of New York. See MTD at 20-22. That argument fails because specific personal jurisdiction is not based on the claims of absent class members, which was unaffected by *Bristol-Myers*. and (b) the BMS decision did not change that rule.

Defendant asks this Court to extend BMS to class actions without citation to any persuasive – let alone binding – authority to support its position. "Under Defendant's premise, BMS would require plaintiffs to file fifty separate class actions in fifty or more separate district courts across the United States – in clear violation of congressional efforts at efficiency in the federal courts." *In re: Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-md-02047, 2017 WL 5971622, at *19 (E.D. La. Nov. 30, 2017)The Court should decline Defendant's invitation to usurp federal class actions.

16

A.   Absent Class Members' Claims Are Not Relevant To Specific Personal Jurisdiction

Defendant's argument that the Court lacks specific personal jurisdiction over claims of absent, out-of-state class members fails for several reasons:

First, it is well-established that "[w]hen [an] action is brought as a purported class action, personal jurisdiction over each defendant is assessed with respect to the named plaintiffs' causes of action." *Famular v. Whirlpool Corp.*, No. 16-cv-944, 2017 WL 2470844, at *4 (S.D.N.Y. June 6, 2017)

What matters is that "the named plaintiff's claim [that must] arise out of or result from the defendant's forum-related activities, not the claims of the unnamed members of the proposed class, who are not party to the litigation absent class certification." *Aliano v. Quaker Oats Co.*, No. 16-cv-3087, 2017 WL 56638, at *4 (N.D. Ill. Jan. 4, 2017).  The claims of class members who are not presently named "are irrelevant to the question of specific jurisdiction." *AM Tr. v. UBS AG*, 78 F.Supp.3d 977, 986 (N.D. Cal. 2015), aff'd, 681 F.App'x 587 (9th Cir. 2017).  Defendant does not argue that the Court lacks specific personal jurisdiction over it with respect to the claims of the named New York plaintiffs, which is sufficient to overcome any opposition on the issue.

Decisions after *BMS* confirmed that personal jurisdiction in a putative class action is evaluated by the named plaintiff's claims. See *Jackson v. Bank of Am., N.A.*, No. 16-cv-787, 2018 WL 2381888, at *6-7 (W.D.N.Y. May 25, 2018) (out of state plaintiffs "cannot be lead plaintiffs for a potential class action in New York, though the lack of specific jurisdiction potentially would not be an impediment to unnamed members of a class."); *Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*, No. 17-cv-00564, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017) ("[N]onnamed class members .. . may be parties for some purposes and not for others. The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various

17

procedural rules that may differ based on context.") (quoting *Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002) (emphasis in original)); *In re: Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-md-02047, 2017 WL 5971622, at *19 (E.D. La. Nov. 30, 2017) ("Accordingly, it is clear and beyond dispute that Congress has constitutional authority to shape federal court's jurisdiction beyond state lines to encompass nonresident parties. And Congress has done so repeatedly – with Rule 4, MDLs, and class actions."); *Feller v. Transamerica Life Ins. Co.*, No. 16-cv-01378, 2017 WL 6496803, at *17 (C.D. Cal. Dec. 11, 2017) ("[T]he Court is not persuaded to extend BMS to the class action context on these facts. … The Court thus has personal jurisdiction over Transamerica as to all putative class members in the National Class.").

Second, the fact that absent class members are not "haling" the defendant into any forum makes all the difference for purposes of analyzing personal jurisdiction.  See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random' or 'fortuitous' or 'attenuated' contacts.").

Although absent class members may ultimately recover from a defendant, they never assert claims against a defendant in a sense that matters for personal jurisdiction. It is the named plaintiffs who force the defendant to answer the suit, respond to discovery, and defend against class certification. Likewise, the defendant need only propound discovery and file dispositive motions against the named plaintiffs. In contrast, "an absent class- action plaintiff is not required to do anything." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985).  Therefore, the rule that a court can exercise personal jurisdiction over a class so long as it can exercise personal jurisdiction over the claims of the named plaintiffs makes sense.

Third, Defendant simply ignores the fact that courts throughout the country – including in

this Circuit – have long certified multi-state classes in a variety of circumstances where the defendant was not incorporated or headquartered in the forum state.[3] Defendant does not argue that any of those cases are wrongly decided. If that is the case, then Defendant's position cannot be correct. See *In re: Chinese Drywall*, 2017 WL 5971622, at *18 ("If due process acted as a constraint on nationwide class actions, then settlement classes would also be uncertifiable and the Class Action Fairness Act would have a meaningless exercise.").

      B.     <u>*BMS* Does Not Support Dismissing the Claims of the Non-New York Class Members</u>

BMS does not support dismissal of the non-New York absent class members' claims because it did not address a class action and did not change the law on class actions.[4] See *Campbell v. Freshbev LLC*, 322 F.Supp.3d 330, 337 (E.D.N.Y. 2018) (explaining and distinguishing BMS); *Gonzalez v. Costco Wholesale Corp.*, No. 16-cv-2590, 2018 U.S. Dist. LEXIS 171000, at *18, 2018 WL 4783962, at *8 (E.D.N.Y. Sep. 29, 2018) (same); *Fitzhenry-Russell*, 2017 WL 4224723, at *5 (same); *In re: Chinese Drywall*, 2017 WL 5971622, at *12-13 (same); *Feller*, 2017 WL 6496803, at *17 (same).

Instead, BMS involved a mass tort where a group of plaintiffs sued for personal injuries on their own behalf, and in that context the Supreme Court held that the California state court lacked personal jurisdiction over the claims of the named plaintiffs who resided outside California. See *BMS*, 137 S. Ct. at 1777. In her dissenting opinion in BMS, Justice Sotomayor specifically

---

     [3] *Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374 (S.D.N.Y. 2016) (certifying New York, California, and Florida consumer classes against a New Jersey-based corporate defendant); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) (certifying New York and California consumer classes against an Ohio-based corporate defendant).
     [4] *BMS* "concerns the due process limits on the exercise of specific jurisdiction by a State," and the Supreme Court explicitly left open whether the same logic would extend to federal courts under the Fifth Amendment. *See BMS*, 137 S. Ct. at 1783-84.

explained that the Court "[did] not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." Id. at n.4.

In fact, given the unsettled nature of the law following BMS, courts in this Circuit considering whether BMS extends to class actions have denied motions to dismiss similar cases and deferred resolution of the issue to the class certification stage. *Campbell*, 322 F.Supp.3d at 337; *Gonzalez*, 2018 WL 4783962, at *8. And at least one court in this Circuit has declined to extend BMS to a putative class action. *Jensen v. Cablevision Sys. Corp.*, No. 17-cv-00100, 2017 WL 4325829, at *9 (E.D.N.Y. Sept. 27, 2017).

Defendant fails to even address the distinction between class actions and mass tort actions, instead arguing in conclusory fashion that "numerous district courts have ruled the Bristol-Myers decision is applicable in class actions" and that, without elaboration, this Court should follow suit. MTD at 22. However, the distinction is critical because "[i]n a mass tort action, each plaintiff [is] a real party in interest to the complaint" while "[i]n an action brought as a class action, personal jurisdiction is based on a defendant's contacts with the forum state and actions giving rise to the named plaintiffs' causes of action." *Gonzalez*, 2018 WL 4783962, at *7; *Feller*, 2017 WL 6496803, at *17; see also Abraham v. St. Croix Renaissance Grp., L.L.L.P., 719 F.3d 270, 272 n.1 (3d Cir. 2013) ("[U]nlike a class action, a mass action has no representative or absent members because all plaintiffs in a mass action are named in the complaint.").

The same is not true of unnamed class members. Thus, Defendant "has not presented the Court with persuasive argument – much less binding law – compelling extension of Bristol-Myers to class actions." *Fitzhenry-Russell*, 2017 WL 4224723, at *5.

The post-BMS cases cited by Defendant are non-binding and unpersuasive. Def. Mem. 24-

25 citing *Spratley v. FCA US LLC*, No. 17-cv-0062, 2017 WL 4023348, at *7 (N.D.N.Y. Sept. 12, 2017) and *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F.Supp.3d 840, 864 (N.D. Ill. 2018).

*Spratley* is distinct from the present circumstances for at least two reasons.  First, the *Spratley* court dismissed the claims of non-resident named plaintiffs, and contrary to defendant's contentions, it did not discuss absent class members' claims.  2017 WL 4023348, at *6.  Second, *Spratley* was a copycat case to another similar action *within the same district*, which was pending class certification when the dismissal decision was made.  Since the court was unable to dismiss *Spratley* under the "first-filed" rule since both cases were in the same district, *Bristol-Myers* provided sufficient justification for disposing of the non-New York plaintiffs' claims.  2017 WL 4023348, at *7.

*Practice Mgmt.* decided to apply *Bristol-Myers* at the certification stage, instead of on a motion to dismiss, which is what defendant seeks here.  301 F.Supp.3d 840 at 846 (noting that defendant's citation to *Bristol-Myers* in its third motion of supplemental authority in opposition to plaintiff's class certification was sufficient to prevent the court from exercising jurisdiction over non-Illinois class members).

Further, the adoption of *Practice Mgmt.* for the result sought by defendant does not even extend to all district courts in Illinois' Northern District.  *Al Haj v. Pfizer Inc.*, 338 F.Supp.3d 815 (N.D. Ill. 2018).  In Al Haj, the court distinguished post-*Bristol-Myers* cases where courts were not required to "assess personal jurisdiction with regard to ... non-resident putative class members" from other cases, where *BMS* was interpreted to "outlaw nationwide class actions."  338 F.Supp.3d 815 at 818 citing *Molock v. Whole Foods Mkt., Inc.*, 297 F.Supp.3d 114, 127 (D.D.C. 2018).

That court concluded, "the first set of decisions has it right" and declined to apply *Practice*

*Mgmt.* and *Bristol-Myers* to the standard, typical nationwide class action context.

Other federal courts have noted that the decision in *Practice Mgmt.* was an anomaly and not supported by most states which have considered the issue.  *Knotts v. Nissan North America, Inc.*, 346 F.Supp.3d 1310 at 1332-33 (D. Minn. 2018) quoting *Chernus v. Logitech, Inc.*, No. 17-cv-673, 2018 WL 1981481, at *7 (D.N.J. Apr. 27, 2018) ("Outside of Illinois, district courts have largely declined to extend BMS to the class action context. Indeed, 'most of the courts that have encountered this issue have found that Bristol-Myers does not apply in the federal class action context.'")

While authority can be located supporting the application of *Bristol-Myers* in a class action, a closer look shows the consideration of personal jurisdiction was incidental to those Courts' dispositions.  ECF 9 at 3 citing *Spratley v. FCA US LLC*, No. 17-cv-0062, 2017 WL 4023348, at *7 (N.D.N.Y. Sept. 12, 2017) (where the "first-filed" rule was not applicable for dismissal due to similar case within same District, applying *Bristol-Myers* to effectively dispose of the majority of the claims).

None of cases proffered by defendant considered the meaningful distinction between mass actions and class actions. Plaintiff respectfully submits the cases it has presented are far more persuasive.  Further, the application of BMS is better suited at the certification stage.

**VIII.  PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF**

Plaintiffs and reasonable consumers seek to be relieved from Defendant's continuing misleading and deceptive practices in the future, which is no more truthful today than when plaintiff first discovered the alleged deception.  *Ackerman v. Coca–Cola Co.*, 09–cv–395, 2013 WL 7044866, at *15 n. 23 (E.D.N.Y. July 18, 2013);

Defendant argues that Plaintiff lacks standing to pursue injunctive relief because there is

no indication that she intends to purchase any of the Products again, and is therefore unlikely to suffer any future injury. Def. Mem., pgs. 4-5. However, this argument ignores that "an injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf." *Belfiore v. Procter & Gamble Co.*, F.Supp.3d 440, 445 (E.D.N.Y. 2014). To hold otherwise "denigrate[s] the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated." Id. See *Delgado v. Ocwen Loan Servicing Company, LLC*, No. 13-cv-4427, 2014 U.S. Dist. LEXIS 135758, 2014 WL 4773991, at *42 (E.D.N.Y. Sept. 23, 2014)

("Finding that Plaintiffs have no federal standing to enjoin a deceptive practice once they become aware of the scheme would eviscerate the intent of the California legislature in creating consumer protection statutes.") (internal quotation marks and citation omitted); *Ackerman v. Coca-Cola Co.*, 2013 U.S. Dist. LEXIS 184232, 2013 WL 7044866, at *56 n.23 (E.D.N.Y. July 17, 2013) ("[C]ourts have consistently held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer. To hold otherwise would 'effectively bar any consumer who avoids the offending product from seeking injunctive relief.'") (quoting *Koehler v. Litehouse, Inc.*, 2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012)).

Some have argued that the policy considerations behind state consumer protection laws must yield to the Constitution. But there is no conflict between the two. The Supreme Court has held that "[t]he standing inquiry focuses on whether the plaintiff is the proper party to bring this suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). This formulation thus presupposes that the proper party exists: The reference is to the proper party, whomever that happens to be, not to a proper party, who might or might not exist. And this is consistent with the reasoning of courts that have

held injunctive relief to be appropriate in consumer fraud class actions: Given the specific conundrum intrinsic to these cases—that anyone who becomes aware of the deception and so is positioned to bring a complaint is unlikely to be duped again—the usual application of the standing rule must be adjusted accordingly if there is ever to be a proper party, which the Raines formulation indicates there must be. In these cases, the proper party to request injunctive relief is the party that already has standing to request other forms of relief arising out of the same case or controversy. This is the best conceivable party given the very nature of the cause of action and the public interest. Article III does not require more than this. The alternative is a state of affairs in which those who need and are entitled to injunctive relief are epistemologically unable to act on that right while those who have the knowledge to do so are for this very reason legally disqualified from doing so.

## IX.   CONCLUSION

Though "a party may amend its pleading only with the opposing party's written consent or the court's leave" after the expiration of time for amendment as a matter of course, the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[T]he 'permissive standard' of Rule 15 'is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015). Plaintiffs have not had an opportunity to amend their pleading in response to a Court order evaluating the sufficiency of his allegations. As the Second Circuit observed, "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley*, 797 F.3d at 190.

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety

or in the alternative, grant leave to amend or dismiss without prejudice.

Dated:   August 9, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

1:19-cv-01356-DLC
United States District Court
Southern District of New York

Wanda Watson, individually and on behalf of all others similarly situated,

                        Plaintiffs,

     - against -

Kellogg Sales Company

                        Defendant

Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
  Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  August 9, 2019

                                     /s/ Spencer Sheehan
                                   Spencer Sheehan