Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

United States District Court
Southern District of New York                          1:19-cv-01356-DLC

Joanne De La Cruz Beras, individually and
on behalf of all others similarly situated,

                                Plaintiff

                                                    Second Amended Class Action Complaint

            - against -

Kellogg Sales Company

                                Defendant

        Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining

to plaintiff, which are based on personal knowledge:

        1.      Kellogg Sales Company ("defendant") manufactures, distributes, markets, labels and

sells crackers identified as "Grahams Crackers" or "Grahams" under the Keebler brand

("Products").

        2.      The Products are available to consumers nationwide from third-party retailers,

including brick and mortar and online stores and directly available through defendant's website.

        3.      The Product varieties include original, honey and cinnamon, sold to consumers

nationwide from stores and websites by third-parties in various sizes.

        4.      The relevant front label representations include light brown crackers, the Product

name "Grahams" several times larger than "crackers" beneath it and an unrefined stalk of wheat.

5.      The honey and cinnamon contain a jar of honey with a honey dipper and the several rolls of cinnamon.

  

6.      Graham flour is a coarse-ground "unbolted" flour, made from the whole grain – endosperm, germ, and bran.

7.      White flour is refined so that only the endosperm of the wheat remains.

8.      Consumers expect foods to have common or usual names which contain simple and direct terms to indicate its basic nature and characterizing properties or ingredients.

9.      Reasonable consumers expect the Products' composition to conform to their name because the term "graham" modifies "crackers" such that graham flour will presumably be the predominant or exclusive flour type.

10.     The proportion of this component has a material bearing on price or consumer acceptance of the Products because it is more expensive and contains more nutrients than non-whole grain flours.

11.     Dictionaries confirm what reasonable consumers expect when it comes to graham crackers, defining them as "a slightly sweet cracker made of whole wheat flour" and "a semisweet

cracker, usually rectangular in shape, made chiefly of whole-wheat flour."[1]

12.   Graham crackers are distinct from cookies and are marketed through different channels and are classified in different categories for the purposes of retail distribution.

13.   Consumers know that cookies are: entirely made from white flour, have large amounts of refined sugar, inclusions (i.e., chocolate chips) baked into the round and expanded dough, chewy, and sold in cookie aisle of stores.

14.   Consumers know crackers are more likely to contain less white flour than cookies, flat, crispy, no inclusions, and displayed with the crackers, less sugar, alternate sweetening agents.

15.   Average Americans fondly recall graham crackers being a hearty snack when growing up, as opposed to a dessert, something consumed after recess or at halftime of a youth soccer game.

16.   Graham crackers were valued because they provided valuable nutrients ("whole grains") and energy, and provided smaller amounts of refined white sugar than cookies.

17.   The whole grain content distinguished the graham cracker from other crackers which were made with mostly white flour.

18.   The representations as "grahams" and/or "graham(s) crackers" is misleading because graham (whole grain) flour is present in an amount less than white (enriched) flour.

| Variety | Ingredients | |
|---------|-------------|---|
| Original | **Enriched flour** (wheat flour, niacin, reduced iron, vitamin B₁ [thiamin mononitrate], vitamin B₂ [riboflavin], folic acid), **sugar, graham flour, canola oil, molasses, corn syrup. Contains 2% or less of** leavening (baking soda, sodium acid pyrophosphate, monocalcium phosphate), salt, soy lecithin. | Enriched Flour (Wheat Flour, Niacin, Reduced Iron, Thiamin Mononitrate [Vitamin B1], Riboflavin [Vitamin B2], Folic Acid), Sugar, Whole Wheat (Graham) Flour, Cottonseed and Partially Hydrogenated Soybean Oil With Tbhg For Freshness, Molasses, Corn Syrup, Contains Two Percent or less of Leavening (Baking Soda, Sodium Acid Pyrophosphate, |

---

[1] https://www.dictionary.com/browse/graham-cracker

Honey

INGREDIENTS: ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, VITAMIN B₁ [THIAMIN MONONITRATE], VITAMIN B₂ [RIBOFLAVIN], FOLIC ACID), SUGAR, CANOLA OIL, GRAHAM FLOUR, MOLASSES, CORN SYRUP, HONEY, HIGH FRUCTOSE CORN SYRUP, CONTAINS 2% OR LESS OF CALCIUM CARBONATE, SALT, BAKING SODA, ARTIFICIAL FLAVOR, SOY LECITHIN.

Monocalcium Phosphate), Calcium Carbonate, Salt, Soy Lecithin, Artificial Flavor.

Enriched Flour (Wheat Flour, Niacin, Reduced Iron, Vitamin B1 [Thiamin Mononitrate], Vitamin B2 [Riboflavin], Folic Acid), Sugar, Canola Oil, Graham Flour, Molasses, Honey, Corn Syrup, High Fructose Corn Syrup. Contains 2% Or Less Of Salt, Baking Soda, Soy Lecithin.

Cinnamon

INGREDIENTS: ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMIN MONONITRATE [VITAMIN B₁], RIBOFLAVIN [VITAMIN B₂], FOLIC ACID), SUGAR, GRAHAM FLOUR, VEGETABLE OIL (COTTONSEED AND PARTIALLY HYDROGENATED SOYBEAN OIL AND/OR CANOLA OIL), CORN SYRUP, CONTAINS TWO PERCENT OR LESS OF CALCIUM CARBONATE, LEAVENING (BAKING SODA, SODIUM ACID PYROPHOSPHATE, MONOCALCIUM PHOSPHATE), SALT, CINNAMON, DEXTROSE, SOY LECITHIN.

Enriched Flour (Wheat Flour, Niacin, Reduced Iron, Vitamin B1 [Thiamin Mononitrate], Vitamin B2 [Riboflavin], Folic Acid), Sugar, Graham Flour, Canola Oil, Corn Syrup, Molasses, Contains 2% or Less of Leavening (Baking Soda, Sodium Acid Pyrophosphate, Monocalcium Phosphate), Calcium Carbonate, Salt, Cinnamon, Dextrose, Soy Lecithin.

19.   the Products are more appropriately identified as "Crackers," with a "Made with Graham Flour" or "Containing Graham Flour" claim, "graham-flavored cracker" or "Crackers with X% Graham Flour."

20.   The labeling is misleading in that it uses a product name that includes one of the product's ingredients (graham flour) but fails to mention one other notable ingredient (white flour).

21.   The labeling of a food with two or more ingredients is misleading by designation of such food with a name which includes or suggests the name of one but not all ingredients, even though the names of all such ingredients are stated elsewhere in the labeling.[2]

22.   The Products' description and name is also misleading because it is not uniform among all identical or similar products ("graham crackers") where graham flour is the predominant flour.

---

[2] 21 C.F.R. § 101.18(b)







23.    When products have identical common or usual names but are distinguished by the amount of their characterizing ingredients (whole grain graham flour), consumers are misled because they will often choose the lesser-quality product.

24.    Defendant sells products labeled as graham crackers which contain more graham than white flour in the food service and institutional (schools, etc.) channel.





25.    Notably, the version of the product which approximates a truthful graham cracker composition is a good source of fiber (3g or 10%), which is what consumers expect when purchasing a product that promotes its whole grain content.

26.    It is proposed that defendant provides graham crackers with predominantly graham flour to its institutional customers.

27.    As a result of appreciating the graham crackers of defendant in the institutional context, consumers purchase the retail version of the Products, which are of lower nutritional value and do not comport with their label and representations.

28.   Since purchasers would have been exposed to and familiar with defendant's graham crackers in other contexts, they are not inclined to examine the fine print in the ingredient list.

I.   Product Name Misleading as to Implied Nutrient Content

29.   Consumers increasingly seek products made with whole grains for its numerous health benefits compared to refined white flour

30.   For example, the 2015 Dietary Guidelines for Americans recommends that at least half of the grains in a healthy diet should be whole grains.[3]

31.   The Products are promoted as a "whole grain" cracker through the Product Name, "Grahams" on the front of the box.

32.   In addition to the product name, the presence of molasses darkens the color of the product which would otherwise be significantly whiter, giving consumers the impression the Products contain *more graham flour* than actually is present.

33.   This is because consumers associate darker hues in grain products with whole grains.

34.   The FDA cautioned manufacturers against misleading consumers as to whole grain content of foods:[4]

> 7.   Question: Does the term "whole grain" mean the same as "100 percent whole grain"? If a product is labeled as "whole wheat bagel" or "whole wheat pizza," how much whole wheat should it contain? What is graham flour?
>
> Answer: FDA has not defined any claims concerning the grain content of foods. However, the agency has established standards of identity for various types of cereal flours and related products in 21 CFR Part 137, including a standard of identity for "whole wheat flour" (§ 137.200) and "whole durum flour" (§ 137.225). Graham flour is an alternative name for whole wheat flour

---

[3] U.S. DEP'T OF AGRIC. AND U.S. DEP'T OF HEALTH & HUMAN SERVS., *Dietary Guidelines for Americans 2015–2020* (8th ed. 2015), *available at* http://goo.gl/qnyfLi (click "A Closer Look Inside Healthy Eating Patterns" under "Chapter 1. Key Elements of Healthy Eating Patterns").

[4] Draft Guidance for Industry and FDA Staff: Whole Grains Label Statements," Docket No. 2006D-0066, ("Whole Grain Guidance").

(§ 137.200).

Depending on the context in which a "whole grain" statement appears on the label, it could be construed as meaning that the product is "100 percent whole grain." We recommend that products labeled with "100 percent whole grain" not contain grain ingredients other than those the agency considers to be whole grains.

35.   FDA has prevented misleading whole grain representations like those described in the Products where whole grain claims are in the product names – "HiHo Deluxe WHOLE WHEAT Crackers" and "Krispy WHOLE WHEAT Saltine Crackers," when they were mainly white flour.[5]

36.   However, misleading whole grain claims still exist, and "[M]any reasonable consumers will likely understand 'whole grain' [claims] to mean that all, or virtually all, of the food product is whole grain, or that all of the grain ingredients in the product are whole grains.[6]

37.   There are long established relationships between ingredients and nutrients such that when a label draws attention to an ingredient, it is impliedly highlighting the presence of the associated nutrient.[7]

38.   By using a product name which contains graham flour (whole grain), the implied message is that the product provides at least 10 percent (a good source) or above 20 percent (high) of the RDI (Reference Daily Intake) or the DRV (Daily Reference Value) of fiber.[8]

39.   However, the Products are not a good source of, nor high, in fiber, as the nutrition facts reveal that none of the versions have more than 1g of fiber (4% or less).

---

[5] CSPI Petition to Prohibit Misbranding of Whole Wheat Products and to Promulgate Food Labeling Regulations Concerning Products Made with Whole Wheat, Docket No. 93P-0227 (Jun. 25, 1993).
[6] In the Matter of Draft Guidance for Industry and FDA Staff: Whole Grains Label Statements, Docket No. 2006-0066 Comments of the Staff of the Bureau of Consumer Protection, the Bureau of Economics, and the Office of Policy Planning of the Federal Trade Commission April 18, 2006
[7] 21 U.S.C. § 343(r)(1); 21 C.F.R. § 101.65.
[8] 21 C.F.R. § 101.54(b)-(c).

Original                                Honey                                Cinnamon



40.    Defendant's 2009 research indicated that an overwhelmingly significant number of consumers are choosing products with whole grain label statements as a means to increase fiber in their diet.[9]

41.    This study found that while a majority of adults identified certain whole foods (vegetables, fruits, nuts) as good sources of fiber, "a significant proportion also perceived manufactured foods made with whole grains (breads, cereals, pasta, and snacks) as good sources of fiber."[10]

42.    According to defendant:[11]

---

[9] FDA-2006-D-0298-0016, Exhibit 1a - "A Survey of Consumers Whole Grain & Fiber Consumption Behaviors, and the Perception of Whole Grain Foods as a Source of Dietary Fiber" - [Kellogg Company - Comment] (July 1, 2010); Docket ID: FDA-2006-D-0298, Guidance for Industry and FDA Staff: Whole Grains Label Statements.
[10] A Survey of Consumers' Whole Grain & Fiber Consumption Behaviors, and the Perception of Whole Grain Foods as a Source of Dietary Fiber March, 2009 Prepared for Kellogg Company
[11] FDA-2006-D-0298-0017, Exhibit 1b - "The American: "Whole" Lot of Fiber Confusion" - [Kellogg Company - Comment] (July 1, 2010).

- At least half of consumers expect that for every one gram of whole grain per serving, there will be at least one gram of fiber;

- Two-thirds of consumers (67%) agree with the statement that whole grain foods are high in fiber; and

- 75% of consumers who observe claims that a product is made with, or contains whole grains, will expect the food to be at least a good source of fiber.

43.    Defendant recommended that to prevent deception from whole grain claims that do not provide a good source of fiber, "FDA should require an accompanying disclosure of fiber content or disclaimer, such as 'not a good source of fiber.'"

44.    Though the FDA did not adopt this requirement, defendant was not prevented from including this disclaimer on the front label.

45.    The Products' statement of identity – "grahams" –  represent that a single ingredient constitutes 100% of the food.

46.    The name of the ingredient – graham flour – purports to be the common or usual name of the product and constitute 100% of the Product, though it is mainly white flour.

47.    The Product name is misleading because it purports to contain crackers made solely from a standardized ingredient – graham flour – yet it actually contains more of another, lower valued standardized ingredient.[12]

48.    Defendant did not use the same brand name prior to 1989 and if it did, the Products contained more graham flour than white flour at that time.

49.    In the alternative, the representations are not implied nutrient content claims and are statements about the presence of an ingredient (whole grains) that are perceived to add value to

---

[12] 21 C.F.R. §§137.105 (white flour), 137.200(a) (graham flour).

the Products.

50.     The practice of passing off refined white flour mixed with small amounts of coarser bran (whole wheat) flour is a practice which has existed for over 100 years.[13]

51.     While the form of the misleading practice has changed, the deception is no longer carried out by the miller, but by the marketer.

52.     The Honey version gives consumers the impression the Products are made in the traditional way, with honey as the predominant sweetening agent, as opposed to sugar.

53.     However, the amount of honey is much smaller than the sugar, and honey is better characterized as a flavoring agent for the Products.

54.     The misrepresentation of honey in the production and sale of graham crackers is unfortunately old hat.

> This product was sold as milk and honey graham crackers but contained little or no milk and very little honey in comparison with the amount of sugar that was used as the principal sweetening agent.
>
> …
>
> The article was alleged to be adulterated in that a product containing little or no milk, and very little honey in comparison with sugar (sucrose) the principal sweetening agent, had been substituted wholly or in part for the article.
>
> The article was alleged to be misbranded in that the statement "Milk and Honey Grahams" was false and misleading and tended to deceive and mislead the purchaser.
>
> FDA Notices of Judgment, 29838. Adulteration and misbranding of graham crackers. U. S. v. 310 Cartons of "Burry's Crisp Brown Milk and Honey Grahams." Consent decree of condemnation and destruction. (F. & D. No. 43972. Sample No. 21810-D.)

---

[13] J.A. Le Clerc et al., "Graham Flour: A Study of the Physical and Chemical Differences Between Graham Flour and Imitation Graham Flours," USDA Bureau of Chemistry Bulletin (164), Apr. 12, 1913

II.  Conclusion

55.    The Products contain other representations which are misleading and deceptive.

56.    As a result of the false and misleading labeling, the Products are sold at premium prices – no less than $2.99 per 15 oz (425g), excluding tax – compared to other similar products represented in a non-misleading way.

Jurisdiction and Venue

57.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

58.    Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

59.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

60.    Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

61.    A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

62.    Plaintiff Joanne De La Cruz Beras is a citizen of Bronx County, New York.

63.    Defendant is a Delaware corporation with a principal place of business in Battle Creek (Calhoun County), Michigan.

64.    During the class period, Plaintiff purchased one or more of the Original, Honey and Cinnamon Products for personal use, consumption or application with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

12

65.     Plaintiff purchased the Products based upon the representations on the packaging.

66.     Plaintiff would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

<u>Class Allegations</u>

67.     The classes will consist of all consumers in all 50 states with sub-classes for the individual states.

68.     The present complaint contains a Plaintiff from New York who will represent her state sub-class of persons who purchased any Products containing the actionable representations during the statutes of limitation.

69.     Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if Plaintiff and class members are entitled to damages.

70.     Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

71.     Plaintiff is an adequate representatives because her interests do not conflict with other members.

72.     No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

73.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

74.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

75.     Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350

76.    Plaintiff asserts causes of action under the consumer protection statutes of the New York General Business Law ("GBL") §§ 349 & 350.

77.    Plaintiff and class members assert causes of action under the consumer protection laws of their States, *supra*.

78.    Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

79.    Plaintiff and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

80.    The representations and omissions were relied on by Plaintiff and class members, who paid more than they would have, causing damages.

Negligent Misrepresentation

81.    Plaintiff and class members incorporate by references all preceding paragraphs.

82.    Defendant misrepresented the misrepresented the substantive, health, organoleptic and nutritional attributes of the Products' composition.

83.    Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

84.    This duty is based on defendant's position as an entity which has held itself out as having special knowledge in the production, service and/or sale of the product type.

85.    The representations took advantage of cognitive shortcuts made by consumers at the point-of-sale and their trust placed in defendant, a well-known and widely recognized and respected brand in this sector.

86.    Plaintiff and class members reasonably and justifiably relied on these negligent

misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

87.     Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

> Breach of Express Warranty and Implied Warranty of Merchantability,
> Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

88.     Plaintiff incorporates by references all preceding paragraphs.

89.     Defendant manufactures and sells products which contain a characterizing ingredient.

90.     The Products warranted to Plaintiff and class members that they possessed substantive, functional, nutritional, compositional, organoleptic, sensory, physical and other attributes which they did not.

91.     Defendant had a duty to disclose and/or provide a non-deceptive description of the Products and knew or should have known same were false or misleading.

92.     This duty is based, in part, on defendant's position as one of the largest users of graham, and whole grain flours, in the world.

93.     The Products warranted to plaintiff and class members that the ingredient on the front label and which constituted the product name, was the most predominant ingredient of the type (flour), in the Products.

94.     Plaintiff desired to purchase products which were as described by defendant.

95.     The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions and were not merchantable.

96.     Plaintiff and class members relied on defendant's claims, paying more than they would have.

Fraud

97.   Plaintiff incorporates by references all preceding paragraphs.

98.   Defendant's purpose was to sell a product by utilizing a product name which consisted only of a whole grain flour.

99.   Defendant knew of consumers' misperceptions with respect to whole grains and fiber and even advised how to limit these mistaken beliefs, yet failed to implement its own advice.

100.  Defendant's intent was to secure economic advantage in the marketplace against competitors.

101.  Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

Unjust Enrichment

102.  Plaintiff incorporates by references all preceding paragraphs.

103.  Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE,** plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct such practices to comply with the law;

3.  Injunctive relief for members of the State Subclasses pursuant to the consumer protection

16

laws of their States;

4. An award of restitution and disgorgement pursuant to the consumer protection laws of the States where this is authorized;

5. An order enjoining Defendant, pursuant to the relevant state consumer protection laws, to remove and/or refrain from using representations on Defendant's Products described here;

6. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and consumer protection law claims, and other statutory claims;

7. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

8. Such other and further relief as the Court deems just and proper.

Dated:   January 28, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

1:19-cv-01356-DLC
United States District Court
Southern District of New York

Joanne De La Cruz Beras, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Kellogg Sales Company

Defendant

## Second Amended Class Action Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
   Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: January 28, 2020

/s/ Spencer Sheehan
Spencer Sheehan